836 So.2d 14 (2003)
Michael J. FONTENOT
v.
REDDELL VIDRINE WATER DISTRICT, et al.
Kenneth Haynes
v.
Williams Fence and Aluminum.
Nos. 2002-C-0439, 2002-C-0442, 2002-C-0478.
Supreme Court of Louisiana.
January 14, 2003.
*16 Sammie M. Henry, Baton Rouge, JOHNSON, STILTNER & RAHMAN, Bradley J. Gadel, PERCY, SMITH, FOOTE & GABEL, Alexandria (No. 2002-C-0442), George A. Flournoy, Alexandria (No. 2002-C-0478), Counsel for Applicant (No. 2002-C-0439).
Michael B. Miller, Crowley, George A. Flournoy, Alexandria, FLOURNOY, DOGGETT & LOSAVIO (No. 2002-C-0442), Bradley J. Gadel (No. 2002-C-0478), Counsel for Respondent (No. 2002-C-0439).
Joseph B. Guilbeau, Denis P. Juge, Metairie, Counsel for Louisiana Association of Business & Industry (Amicus Curiae).
Wayne J. Fontana, New Orleans, Stephen W. Glusman, Baton Rouge, Counsel for Louisiana United Business Association, Employers Self Insurers Federation, Louisiana Home Builders Association Self Insurance, Louisiana Restaurant Association Self Insurers, Louisiana Commerce & Trade Association, Louisiana Association of Self Insured, Louisiana Hospital Association Workers' Compensation, Louisiana Agricultural Association, Louisiana Health Care Self Insured, Sugar Cane Safety Group (Amicus Curiae).
KNOLL, Justice.
These consolidated workers' compensation cases[1] address the common issue of whether LA.REV.STAT. ANN. § 23:1201(F) provides multiple penalties for multiple violations regarding the payment of compensation and medical benefits claims. In addition, the latter case, Haynes v. Williams Fence and Aluminum, poses the question of whether LA.REV.STAT. ANN. § 23:1221(3)(c)(i) or LA.REV.STAT. ANN. *17 § 23:1226(B)(2) governs the locality where a vocational consultant should focus his efforts in returning the injured worker to gainful employment. For the following reasons, we affirm the appellate court's decision to impose multiple penalties for multiple violations of compensation and medical benefit claims, and reverse its determination on the proper locality for use by a vocational consultant in Haynes.

FACTS AND PROCEDURAL HISTORY
As a prefatory matter, we point out that we will first set out the facts of each case. We will then discuss the appellate court's respective resolutions of the penalty issue common to the two cases. Thereafter, we will address the vocational consultant question applicable only to Haynes.
On October 7, 1997, Michael Fontenot was injured in the course and scope of his employment with the Reddell Vidrine Water District (hereinafter Reddell). Reddell's compensation insurer, Louisiana Workers' Compensation Corporation (hereinafter LWCC), paid Fontenot temporary total disability benefits of $169.23 per week. Thereafter, LWCC began paying supplemental earning benefits of $97.56 per month. Later, Fontenot filed a disputed claim with OWC, alleging improper payment of compensation benefits and medical expenses. After conducting an evidentiary hearing, the hearing officer determined that LWCC miscalculated the initial temporary total disability rate, improperly reduced his disability benefits to SEB, and incorrectly refused authorization of emergency treatment for an aggravation of Fontenot's work-related injury. The hearing officer awarded penalties of $6,000, calculated at the rate $2,000 for each violation, and awarded attorney's fees of $7,500.
On January 19, 1999, Kenneth Haynes, a helper with Williams Fence and Aluminum (hereinafter Williams Fence), suffered an injury to his left wrist while in the course and scope of his employment. Louisiana United Businesses Association Self-Insurers Fund (hereinafter LUBA), the workers' compensation insurer for Williams Fence, began paying temporary total benefits of $194 per week, a sum which did not reflect earnings based on a 40-hour work week. Thereafter, LUBA refused to authorize a recommended surgical procedure by the physician of claimant's choice, and its claims adjuster threatened to reclassify the worker's benefits if he did not allow the original doctor to perform the surgery. In actuality, Haynes' temporary total disability benefits were reclassified as SEB from July 14, 1999 through June 11, 2000; nonetheless, LUBA never paid SEB during that period because it claimed it never received the appropriate form setting forth Haynes' monthly report of earnings after it reclassified him. On May 1, 2000, LUBA authorized the arthroscopic procedure. On June 12, 2000, the arthroscopy was performed. Temporary total disability benefits were initially reinstituted for a week and were thereafter made retroactive to the discontinuance. After Haynes filed a disputed claim, a hearing officer concluded that LUBA had properly calculated Haynes' average weekly wage, held that Williams Fence was not arbitrary and capricious when it contested Haynes' requested change of physicians, found claimant not qualified for temporary total benefits from July 14, 1000 through June 11, 2000, and further determined that Williams Fence had properly suspended SEB because Haynes failed to supply the information required to calculate that benefit.
Both cases were appealed to the Court of Appeal, Third Circuit. Initially, the appellate court, inter alia, held Fontenot was *18 entitled to receive only one penalty under LA.REV.STAT. ANN. § 23:1201(F). Fontenot v. Reddell Vidrine Water Dist., 2000-762 (La.App. 3 Cir. 2/21/01), 780 So.2d 1197. Later, before a different panel of judges, the same appellate court rejected the holding in Fontenot and held Haynes was entitled to receive multiple penalties under LA.REV.STAT. ANN. § 23:1201(F) if there was more than one violation of the statute. Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.App. 3 Cir. 7/25/01), 805 So.2d 215. In addition, the court of appeals in Haynes further determined that the employer was only required to show that a job was available to the employee in either the employee's or employer's community or reasonable geographic region; in so finding, the appellate court rejected the argument that although Haynes had moved from the employer's community, the employer was not required to first show job availability in the employee's community. Haynes, 805 So.2d at 232.
Subsequently, Fontenot applied for a writ of certiorari with this Court. In a per curiam opinion, we vacated the Fontenot ruling and remanded the case to the appellate court for an en banc hearing to reconcile the appellate court's differing holdings in Haynes and Fontenot with regard to the proper interpretation of the penalty provision in LA.REV.STAT. ANN. § 23:1201(F). Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.10/31/01), 798 So.2d 951. In an en banc ruling, the appellate court adhered to its ruling in Haynes, allowing multiple penalties under LA.REV.STAT. ANN. § 23:1201(F) for multiple violations regarding indemnity and medical benefit claims. Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La. App. 3 Cir. 1/9/02), 815 So.2d 895. Likewise, in conformity with this Court's remand in Fontenot, the appellate court heard argument on a motion for rehearing in Haynes. The reviewing court adhered to its earlier ruling, allowing for multiple penalties under LA.REV.STAT. ANN. § 23:1201(F) for multiple violations regarding the payment of compensation and medical benefit claims. Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.App. 3 Cir. 1/9/02), 805 So.2d 233. In its decision in Haynes, the appellate court stated, "Because we address only the penalty issue presented by the interpretation of multiple penalties under LA.REV. STAT. ANN. § 23:1201(F), we do not consider the other issues raised in the initial appeal or in the application for rehearing, and we leave those issues for determination by the original panel." Haynes, 805 So.2d at 235. On January 10, 2002, the original panel denied Haynes's application for rehearing. We granted the employers' writ applications to further examine the en banc decisions relative to penalties. Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.4/26/02), 813 So.2d 1095; Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.4/26/02),5 813 So.2d 1095.[2] We also granted Haynes's writ application to consider the vocational rehabilitation *19 issue. Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.4/26/02), 813 So.2d 1096.

LAW AND DISCUSSION
Multiple Penalties Issue
The employers, Reddell Vidrine and Williams Fence, contend the appellate court erroneously interpreted and applied the law of this state in finding LA.REV.STAT. ANN. § 23:1201(F) allows multiple penalties for multiple violations regarding the payment of compensation and medical benefits claims when strict construction of the statute allows for a single penalty each for indemnity and medical benefits. In support of their argument, the employers, relying on the wording of the statute, stress the statute's reference to "a penalty," the statute's use of the word "claim," and language that the penalty should not exceed $2,000 "in the aggregate for any claim."
On the other hand, the employees, Fontenot and Haynes, contend the penalty provision of LA.REV.STAT. ANN. § 23:1201(F) allows multiple penalties so as to encourage the employer and its workers' compensation insurer to make proper and timely payments of compensation and medical benefits. They argue that without multiple penalties for each category of benefits, there would be no incentive for the employer or its insurer to make such payments if their obligation would be capped at $2,000 for each of these benefit categories.
In our analysis, we focus on the specific penalties assessed in the two cases before us under the provisions of LA.REV. STAT. ANN. § 23:1201(F). In Haynes, the appellate court reversed the hearing officer's award of only one $2,000 penalty for the payment of indemnity and medical benefits, and assessed multiple penalties:

Compensation Benefits
 $2,000 penalty for incorrect calculation of temporary total disability benefits
 $2,000 penalty for failure to timely pay supplemental earnings benefits in July 1999

Medical Benefits
 $2,000 penalty for failure to timely authorize surgery with Dr. Genoff[3]
 $2,000 penalty for failure to pay the 2/1/00 bill for Dr. Genoff visit and its failure to pay the travel expenses related thereto
In Fontenot, the appellate court affirmed the hearing officer's award of multiple penalties regarding compensation benefits:
 $2,000 penalty for the miscalculation of the initial temporary total disability rate
 $2,000 penalty for the improper reduction of the temporary total disability benefits to supplemental earnings benefits
Awards of penalties in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and the undesirable conduct of employers and insurers. Williams v. *20 Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. Although it is well accepted that the Workers' Compensation Act is liberally construed with regard to indemnity benefits, it is likewise well established that penal statutes are strictly construed. Williams, 737 So.2d at 46; see also International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La.1988).
Legislation is a solemn expression of legislative will; therefore, interpretation of a law is primarily the search for the Legislature's intent. LA. CIV. CODE ANN. art. 2; Cat's Meow v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no further interpretation may be made in search of legislative intent. LA. CIV. CODE ANN. art. 9. However, when the language of a law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. LA. CIV. CODE ANN. art. 10. In addition, laws on the same subject matter must be interpreted in reference to each other. LA. CIV. CODE ANN. art. 13. Furthermore, as we have pointed out in earlier decisions, when interpreting the Workers' Compensation Act, courts must take into account the basic history and policy of the compensation movement. O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, 128; Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 345.

History of the award of penalties
This Court in two recent cases Brown v. Texas-La. Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885 and Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41,[4] traced the statutory and jurisprudential history of penalty awards in workers' compensation actions.
In Brown, this Court summarized the development of penalties[5] in the workers' compensation arena until 1983:
Prior to the insertion of provisions for penalties ... into La. R.S. 23:1201, penalties... were awarded to injured employees under La. R.S. 22:658 when insurers failed to timely pay claims. Louisiana R.S. 22:658, as it appeared in the Revised Statutes of 1950, provided that all insurers issuing any type of contract other than policies for life, health and accidents, "shall" pay the amount of any claim within a specified time period or be subject to a penalty and reasonable attorney fees if the failure to pay was found to be arbitrary, capricious or without probable cause. In Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (La.1952), this court held La. R.S. 22:658 was applicable to workers' compensation policies. In Acts No. 432 of 1958, the legislature enacted La. R.S. 23:1201.2 which provided for essentially the same penalties *21 ... against employers. It was under these provisions that Louisiana courts were required by statute to analyze the employer's/insurer's actions under the "arbitrary, capricious or without probable cause" standard. See, e.g., Patton v. Silvey Companies, 395 So.2d 722 (La. 1981); Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Guillory v. Travelers Ins. Co., 294 So.2d 215 (La.1974).
In 1983, Act No. 1 of the 1 st Ex.Sess. placed provisions for penalties ... entirely within the Workers' Compensation Act and applied those provisions to both insurers and employers. Specifically, the Act reenacted La. R.S. 23:1201 to provide, inter alia, that the first installment of compensation payable for temporary total disability shall become due on the fourteenth day after the employer has knowledge of the injury on which date all such compensation then due shall be paid. If any installment of such compensation was not paid within the specified time period, a penalty, equal to twelve percent of the unpaid installment, was imposed, "unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply."
Brown, 721 So.2d at 887-888.
Besides the gathering of the varying penalty provisions from diverse statutory locations into a comprehensive workers' compensation act, it is also significant to note that the 1983 amendments replaced the arbitrary and capricious standard for the award of penalties to one of assessing penalties for untimely payment unless the employees rights to benefits were reasonably controverted by the employer or his insurer or the nonpayment resulted from conditions over which the employer or insurer had no control. As noted in Brown, "[u]nreasonably controverting a claim ... requires action of a less egregious nature than that required for arbitrary and capricious behavior." Id. at 890.
Nevertheless, neither Brown nor Williams, addressed the multiple penalties issue now before us. Accordingly, from the outset of our analysis in the present case, we will highlight the more recent legislative enactments, particularly LA. ACTS 1992, No. 1003 and LA. ACTS. 1995, No. 1137 which specifically affect the present issue.
In 1992, the Louisiana Legislature recognized that some employers may have been unreasonable in failing to pay medical bills as well as weekly workers' compensation indemnity benefits. House Committee on Labor and Industrial Relations, Minutes of Meeting 6/18/92. Realizing that the employer's failure to pay medical benefits was not included as a basis for the assessment of a penalty under the provisions of LA.REV.STAT. ANN. § 23:1201, subsection E was amended to read:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. No amount paid as a penalty under this Subsection shall be *22 included in any formula utilized to establish premium rates for worker's compensation insurance. Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the administrative hearing officer determines that the twelve percent or fifty dollars per calendar day, whichever is greater, additional payment is to be made by the employer rather than the insurer. Any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.
The Legislature made several further changes to the penalty provision. In 1995 LA. ACTS No. 1137, the Legislature redesignated former § 23:1201(E) as subsection (F) and rewrote redesignated subsection F into its present form. The Act also inserted new subsection E, thereby establishing a 60-day time limit for the payment of medical benefits, a temporal element not heretofore provided. In addition, Act 1137[6] also conferred upon health care providers the right to assert a claim against the employer for unpaid medical bills and to recover the penalty, as well as attorneys' fees. Accordingly, the penalty provision now reads, in pertinent part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim, however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if *23 such nonpayment results from conditions over which the employer or insurer had no control.
(Emphasis added).

Argument of Reddell and Williams
Relying on phraseology in LA.REV.STAT. ANN. § 23:1201 F, namely, the statute's use of "a penalty," "claim," and "in the aggregate," Reddell and Williams contend the clear and unambiguous use of this terminology requires the reversal of the appellate court. We disagree.
Reference to "a penalty." One of the first rules of interpretation provided in the revised statutes cautions that "[w]ords in the singular number include the plural and the plural includes the singular." LA.REV. STAT. ANN. § 1:7; see also LA. CIV.CODE ANN. art. 3506(2) (stating that "[t]he singular is often employed to designate several persons or things...."). Moreover, we note further that the last sentence of subsection F states that "Penalties shall be assessed...." Accordingly, it is evident that there is inconsistency within subsection F as to whether "a penalty" actually means a single penalty as advocated by Reddell and Williams.[7] Therefore, the legislative use of the term "a penalty" is not preclusive of the issue of whether multiple penalties are provided, thus requiring further inquiry and a closer examination of the statute.
Use of the word claim. Reddell and Williams contend that the appellate court erred when it equated the word claim with a demand for a particular benefit. They argue that such a broad interpretation of the word violates the strict construction accorded penal statutes and gives rise to multiple penalties for each late payment, non-payment, or refusal to pay compensation and medical benefits. They further suggest that such an interpretation would lead to absurd results.
The word claim appears three times in subsection F. In the first instance the word claim is used in the provision that allows the assessment of reasonable attorney fees "for each disputed claim."[8] The word claim later appears in subsection F when the statute caps the fifty dollars per calendar day penalty at $2,000 "for any claim."[9] Lastly, the word claim is used in subsection F(2) when it states that penalties and attorneys' fees are not awarded if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
It is well recognized that although the term "claim" appears throughout the Workers' Compensation Act, a definition of that term does not exist in the Act. Ross v. Highlands Ins. Co., 590 So.2d 1177, 1181 (La.1991). "Nonetheless, it is clear from the context of provisions using the term [in the Workers' Compensation Act] that the underlying claim for relief is what is meant, not the enforcement of a judgment. *24 A claim is initiated by the filing of a petition with the OWC once an issue surfaces which the parties cannot themselves resolve." Id. at 1181; LA.REV.STAT. ANN. §§ 23:1310, 23:1310.3; see also Rock v. City of New Orleans, 94-2613 (La.App. 4 Cir. 9/15/95), 661 So.2d 1091, reversed on other grounds sub nom Fauchaux v. City of New Orleans, 95-2500 (La.1/12/96), 666 So.2d 285.
Viewing the penalty issue contextually, we observe that LA.REV.STAT. ANN. §§ 23:1201(B), (C), (D), and (E) impose a twofold continuing obligation on the employer/insurer: (1) to pay all compensation and medical benefits due, i.e., payment of the correct amount owed, and (2) to pay for compensation and medical benefits within the time limit specified. It is further evident from the statute that should the employer/insurer not abide by those dictates, the Legislature has made available to the employee the provisions of LA.REV.STAT. ANN. § 23:1201(F) which provide for the assessment of a penalty as well as an award for reasonable attorneys' fees as a means to encourage compliance with the statutory obligations.[10] As exemplified in the two consolidated cases before us, it is readily apparent that an employer/insurer may make multiple errors in this regard and may have two or more claims under LA.REV.STAT. ANN. § 23:1201(F). See p. 6, supra.
We find this discourse helpful in the resolution of the issue presented for two primary reasons. First, it is presumed the Legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject. Folse v. Folse, 98-1976 (La.6/29/99), 738 So.2d 1040. Thus, legislative language will be interpreted on the assumption that the Legislature was aware of existing statutes, rules of construction, and judicial decisions interpreting those statutes. New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538. Applying this element to the present case, it is presumed the Legislature was aware of the understanding this Court ascribed in Ross to the undefined word "claim" embodied in the Workers Compensation Act. It is further presumed from the legislatively chosen wording of other provisions of LA.REV.STAT. ANN. § 23:1201 that the Legislature was well aware that an employee might have multiple claims for the various obligations imposed upon employers/insurers and delineated therein.
Secondly, where a statute is susceptible of two constructions, courts will give that construction which best comports with principles of reason, justice, and convenience, for it is to be presumed that the Legislature intentionally employed language that would avoid leading to injustice, oppression, or absurd consequences. Progressive Sec. Ins. Co. v. Foster, 97-2985 (La.4/23/98), 711 So.2d 675; Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980). Evidenced by the numerous cases reported in the jurisprudence, it is well established that the underlying reason for the imposition of penalties and attorneys' fees in the workers' compensation arena is to combat the indifference by employers and insurers toward injured workers. See e.g., Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d *25 41; Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382.
In light of our foregoing discussion, we find it consistent with the legislative intent to interpret "claim" as a demand for particular benefits as found by the appellate court. Such an interpretation is consistent with the other provisions of LA.REV.STAT. ANN. § 23:1201 and in accord with the purpose for the Legislature's inclusion of penalties and attorneys' fees in the scheme of workers' compensation law. In those instances where a claim is either not reasonably controverted or if nonpayment results from conditions under the control of the employer or insurer, this proviso for multiple penalties will address the recalcitrant employer or insurer and will encourage employers and their workers' compensation insurers to honor their continuing obligation to the injured worker. "[T]o conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker `whole' but rather to discourage specific conduct on the part of the employer." Haynes, 805 So.2d at 231(quoting Gay v. Georgia Pacific Corp., 32,653 (La.App. 2 Cir. 12/12/99), 754 So.2d 1101); see also Sharbono, 696 So.2d at 1386. Simply stated, without such an understanding of the statute, there would be nothing to leverage the obstinate employer or its insurer to comply with their statutory obligation to the injured worker.
In reaching this determination, we find no merit to the contention of Reddell and Williams that the Legislature's use of the phrase "in the aggregate" would be rendered meaningless if multiple penalties for indemnity and medical benefits are allowed to stand. When the Legislature amended LA.REV.STAT. ANN. § 23:1201(F) in 1995, it changed the wording from "in the aggregate" to "in the aggregate for any claim." The phrase "in the aggregate" is defined as: "considered as a whole: collectively." WEBSTER'S NEW COLLEGIATE DICTIONARY 22 (1981). When a new statute is worded differently from the preceding statute, it is presumed the Legislature intended to change the law. Brown, 721 So.2d at 889; New Orleans Rosenbush Claims Service, Inc., 653 So.2d at 544. With the inclusion of the additional language, it appears that the Legislature recognized that there may be more than one claim and added language to clarify that multiple $50 per day penalties existed, each collectively which could not exceed $2,000.
In further support of our determination, we find that if the Legislature had so desired, it could easily have done as it did with regard to provisions it made for health care providers to recover penalties and attorneys' fees in certain instance. See n. 6, supra. In that instance, as part of the amendments of 1995 LA. ACTS No. 1137 when subsection (F) was rewritten and redesignated, the Legislature specified: "This Subsection [(4)] shall not be construed to provide for recovery of more than one penalty or attorney fee." We find its silence as to a like result in the present instance is telling.
We further disagree with the contention of Williams and Reddell that adoption of the appellate court's holding results in absurd consequences. As we have stated on numerous occasions, the body of workers' compensation law is in the nature of social legislation. O'Regan, 758 So.2d at 128 (quoting Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942)).[11] This facet is not to be forgotten.
*26 In that regard, it is appropriate to further call to mind, for both the employers/insurers and injured workers alike, that their roles in this system of social legislation are not to be taken lightly. For employers/insurers, the need to provide for injured workers is a continuing obligation, one recognized in the legislative enactments as a duty to pay the employee or dependent the maximum percentage of wages to which the employee is entitled, to make compensation payments timely, and to provide needed medical care in conformity with statutory guidelines. Correlatively, injured workers are required by LA.REV.STAT. ANN. § 23:1208 not to misrepresent their entitlement to workers' compensation benefits, to submit to medical examination as required by LA.REV.STAT. ANN. § 23:1124, to cooperate with vocational rehabilitation as provided in LA.REV. STAT. ANN. § 23:1226(E), and to bring only bona fide disputes, i.e., good faith claims, before the OWC.
Finally, we express no opinion about the theoretical set of facts that the amicus curiae poses in its brief relative to a potential multiple penalties case. This Court has frequently noted that the grant of judicial power implicitly restricts our courts to review only matters which are justiciable, i.e., actual and substantial disputes with adverse parties, not hypothetical, moot, or abstract questions of law. See Cat's Meow v. City of New Orleans, 98-0601 (La.10/29/98), 720 So.2d 1186, 1193; Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240, 251; Louisiana Associated Gen. Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185, 1193. We have defined a "justiciable controversy" as "an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character." Abbott v. Parker, 259 La. 279, 249 So.2d 908, 918 (1971). This Court has clearly held that "[t]he Constitution does not vest [Louisiana courts] with jurisdiction to render advisory opinions." Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458, 461 (1960). Guided by our holding today, we are confident the OWC and the appellate courts are fully able to ferret out those penalties for which an award should be made.[12]
*27 We find the appellate court properly interpreted the provisions of this statute in favor of finding that LA.REV.STAT. ANN. § 23:1201(F) provides multiple penalties for multiple violations of compensation and medical benefits claims.

Locality: vocational rehabilitation
In addition to his employer's writ application, Haynes also filed a writ application with this Court as to that portion of the appellate court decision that held the employer's locale primed the employee's locale in determining where a vocational rehabilitation consultant was to focus its job search attention. Based upon this holding the appellate court affirmed the OWC's denial of Haynes's request for attorneys' fees for Williams's arbitrary discontinuance of vocational rehabilitation. We granted Haynes's writ application to address the question of whether LA.REV. STAT. ANN. § 23:1221(3)(c)(i) or LA.REV. STAT. ANN. § 23:1226(B)(2) governs the locality where a vocational consultant should first focus his efforts in returning the injured worker to gainful employment. Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.4/26/02), 813 So.2d 1096.
In a nutshell, the undisputed facts show that Haynes suffered a work related injury on January 19, 1999, while he was employed at Williams, a small aluminum siding and fence company located in the area of Pineville, Louisiana. After Haynes underwent initial orthopedic surgery on January 22, 1999, to repair a rather serious wrist injury, LUBA, Williams's workers' compensation provider, hired Vocational Solutions to provide vocational rehabilitation services to Haynes. Haynes originally met with a vocational rehabilitation consultant twice in the Pineville area. Thereafter, between May 17, 1999 and June 12, 2000, Haynes continued to have pain, popping, and clicking in his wrist which required orthopedic consultations. Ultimately, arthroscopic surgery was required on June 12, 2000, to assess and repair frayed ligaments in the wrist.[13]
On July 14, 1999, LUBA converted Haynes's temporary total disability benefits to supplemental earnings benefits.[14] Shortly thereafter, Haynes moved to Breaux Bridge, Louisiana so that his family could give him assistance. An entry in the vocational rehabilitation activity log showed that as of September 7, 1999, the consultant needed to "check the Lafayette *28 area for reasonable availability of minimum wage employment to reduce SEB."
On January 18, 2000, almost a year to the day after the accident, Williams sent a letter to Haynes offering him a light-duty job at its place of business in Pineville. On January 25, 2000, counsel for Haynes wrote Williams a letter informing him that he was not available for the light-duty job in Pineville because he had relocated to Breaux Bridge. At that time, Haynes's attorney asked Williams to concentrate his search for jobs to locations within a reasonable geographic area of Breaux Bridge. LUBA, relying on the provisions of LA. REV.STAT. ANN. § 23:1221(3)(c)(i), declined to seek jobs for Haynes in the Breaux Bridge area, and closed its vocational rehabilitation file.
The OWC denied Haynes's request for attorneys' fees for LUBA's failure to pursue vocational rehabilitation services in the employee's geographic area. The appellate court affirmed the OWC, stating:
The employer is required to prove that the job was available to the employee in either "the employee's or employer's community or reasonable geographic region." La. R.S. 23:1221(3)(c)(i). Although the Pineville area was no longer in Haynes's community or reasonable geographic region due to his move, it was in [Williams's] community or reasonable geographic area.
Haynes, 805 So.2d at 232.
It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, the statute specifically directed to the matter at issue must prevail as an exception to the more general statute. LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, 1229.
LA.REV.STAT. ANN. § 23:1221(3)(c)(i) provides that for purposes of determining supplemental earnings benefits it is appropriate to consider employment that is "proven available to the employee in the employee's or employer's community or reasonable geographic region." Accordingly, as regards supplemental earnings the inquiry must focus on employment shown available in either the employee's or the employer's geographic area.
On the other hand, LA.REV.STAT. ANN. § 23:1226(B)(2) provides that for purposes of rehabilitation services, "[w]henever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool." Accordingly, for purposes of vocational rehabilitation, it is the duty of the vocational rehabilitation consultant to examine the job pool in the worker's geographic area. The goal of rehabilitation services is to return a disabled worker to work as soon as possible after an injury occurs. LA.REV.STAT. ANN. § 23:1226(B)(1). To effectuate this goal LA.REV.STAT. ANN. § 23:1226(B)(1) lists prioritized options, the first two of which are to return the worker to the same position or a modified position. In the present case, these first two prioritizations were no longer appropriate options because of the passage of time since the date of injury and because financial circumstances required Haynes to relocate a significant distance from the place of his former employment.
Based upon the particular proviso in the Workers' Compensation Act relative to vocational rehabilitation, we find the lower courts improperly relied upon the more general provisions used in the determination of supplemental earnings benefits.[15] *29 Therefore, we find it necessary to remand this matter to the appellate court for reconsideration of Haynes's assignment of error relative to his entitlement to attorneys' fees because of Williams's discontinuation of vocational rehabilitation services after the consultant only looked for jobs in the employer's geographic area.

DECREE
For the foregoing reasons, we affirm the appellate court's decisions in Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.App. 3 Cir. 1/9/02), 815 So.2d 895 and Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.App. 3 Cir. 1/9/02), 805 So.2d 233 which allowed multiple penalties under LA.REV.STAT. ANN. § 23:1201(F) for multiple violations regarding the payment of compensation and medical benefit claims. However, we reverse the appellate court's decision considered by us in Haynes v. Williams Fence and Aluminum, XXXX-XXXX (La.4/26/02), 813 So.2d 1096, on Williams's discontinuance of vocational rehabilitation services and remand that aspect of this case for consideration by the appellate court of Haynes's claim for attorneys' fees.
2002-C-0439, AFFIRMED.
2002-C-0442, AFFIRMED.
2002-C-0478, REVERSED AND REMANDED.
VICTORY, J., concurs in part and dissents in part and assigns reasons.
VICTORY, J., concurring in part and dissenting in part.
I concur in the first portion of the majority opinion which affirms the appellate court's decision to impose multiple penalties for multiple violations of compensation and medical benefit claims. However, I dissent from the majority's remand of this matter to the appellate court for reconsideration of Haynes' assignment of error relative to his entitlement to attorneys' fees because of his employer's discontinuation of rehabilitation services after the consultant only looked for jobs in the employer's geographic area.
I agree with the majority that the right to vocational rehabilitation services under La. R.S. 23:1226 is different from the right to supplemental earnings benefits under. La. R.S. 23:1221. An injured worker who is able to earn 90% or more of his former wage is not entitled to SEBs, but would be entitled to vocational rehabilitation services. Under La. R.S. 23:1221(3)(c)(i), for purposes of determining supplemental earnings benefits, it is appropriate to consider employment that is "proven available to the employee in the employee's or employer's community or reasonable geographic region." Therefore, a job offer of a modified job at the employer's place of benefits with the same salary satisfies the requirements of the supplemental earnings benefits provisions, and that worker, i.e., Haynes, would not be entitled to SEBs.
La. R.S. 23:1226(A) provides that when an employee has suffered a compensable injury which precludes him from earning wages "equal to wages earned" before this injury, he is entitled to "prompt rehabilitation services." Thus, while the right to vocational rehabilitation services is different from the right to SEBs, it is necessarily linked. In this case, Haynes is not entitled to SEBs because he can earn *30 100% of his pre-injury wages at a modified job at his employer's place of business. I question whether this worker is even entitled to vocational rehabilitation as only workers who are precluded from earning wages equal to wages earned before their injury are entitled to rehabilitation services.
Further, La. R.S. 23:1226(B)(3) provides that "the employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training." In addition, La. R.S. 23:1226(B)(1) provides that "the goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs" with the first appropriate option being the "return to the same position" and the second appropriate option being the "return to a modified position." Here, the vocational counselor located a job for Haynes that would return him to a modified position at his old job. Haynes seeks attorneys' fees under La. 23:1201 because the vocational counselor did not try to find a job for him at his new residence in Breaux Bridge. However, just as a job at the employer's community satisfies the SEB provision, it also satisfies the vocational rehabilitation provision, especially given that a return to the same or modified position are the most desirable goals under La. R.S. 23:1226. In my view, La. R.S. 23:1226(B)(2), stating that "whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool" does not mean that an employer with only one place of work cannot fulfill his vocational rehabilitation requirements by offering the employee his old job at the same salary if that employee has moved to another part of the state. In my view, that statute is not directed to an employee who moves away from the employer's place of business after he his injured.
Further, and most importantly, "there is no sanction, however, upon the employer who does not tender rehabilitation services or resists requests for them." H. Alston Johnson III, Louisiana Civil Law Treatise, Vol. 13, Workers' Compensation Law and Practice. La. R.S. 23:1226(B)(3) provides only that "[s]hould the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits." However, an employee who refuses to accept rehabilitation as deemed necessary by the workers' compensation judge shall get a fifty percent reduction in weekly compensation. La. R.S. 23:1226(E). Further, La. R.S. 23:1201, which imposes penalties and attorneys' fees against employers is not directed at the vocational rehabilitation obligation of La. R.S. 23:1226.
Accordingly, for all of the above reasons, I respectfully dissent and would affirm the court of appeal's judgment that Haynes is not entitled to attorneys' fees under La. R.S. 23:1201 for the vocational counselor's return of Haynes to a modified position at his job at 100% of his salary.
NOTES
[1] Both appellate decisions are from the Court of Appeal, Third Circuit.
[2] Although this issue has engendered differing opinions within the Third Circuit, there is no conflict among the circuits. See Harvey v. BE & K Construction Co., 34,057 (La.App. 2 Cir. 11/15/00), 772 So.2d 949, writ denied, 00-3560 (La.3/9/01), 786 So.2d 732. Even though it is contended Haws v. Professional Sewer Rehabilitation, Inc., 98-2846 (La.App. 1 Cir. 2/18/00), 763 So.2d 683 holds otherwise, counsel for Haws withdrew the claim for multiple penalties for failure of the employer to pay various indemnity claims and several requests for medical benefits. Haws does however stand for the proposition that LA.REV. STAT. ANN. § 23:1201(F) allows an employee a separate maximum $2,000 penalty for failure to timely pay compensation benefits and another $2,000 penalty for failure to timely pay medical benefits. The employers/insurers in the present case agree with this latter holding in Haws and do not assert a contrary position at this time.
[3] Williams does not urge that there is no statutory authority to award penalties and attorneys' fees for an employer/insurer's failure to authorize treatment. Notwithstanding, amicus curiae, without elaboration and argument and without reference to this issue having been raised in the courts below, states that no authority exists for the award of penalties when an employer/insurer fails to authorize medical treatment. It is well established that, except for the declinatory exception of lack of subject matter jurisdiction and the peremptory exceptions, two of which, prescription and res judicata, must be specially pleaded, this Court cannot consider contentions raised for the first time in this tribunal which were not pleaded in the court below and which the lower court has not addressed. Boudreaux v. State, DOTD, XXXX-XXXX (La.2/26/02), 815 So.2d 7, 9.
[4] Brown involved awards of penalties and attorney's fees for the employer's and insurer's failure to timely commence payment of compensation benefits. Williams, on the other hand, involved the employer's discontinuance of benefits that were timely commenced.
[5] Attorneys fees are not at issue in the present case, reference made thereto in Brown have been excised for purposes of the discussion at hand.
[6] As a substantive matter, only tangentially applicable herein, Act 1137 also states that the statute shall not be construed so as to allow the recovery of penalties and attorneys' fees for the claimant's attorney and the attorney representing the health care provider. LA.REV.STAT. ANN. § 23:1201(F)(4). Purportedly, this added provision evolved as a legislative response to Burch v. Tioga Nursing Home, 94-489 (La.App. 3 Cir. 11/2/94), 649 So.2d 545, a case that allowed the claimant and the health care provider to each recover penalties and attorneys' fees from the recalcitrant employer. But see Ferrier v. Jordache-Ditto's, 94-1317 (La.App. 3 Cir. 5/17/95), 662 So.2d 14 (on rehearing), writ denied, 95-2865 (La.2/2/96), 666 So.2d 1100, a case that chose not to follow Burch because it determined the award of penalties and attorneys' fees to third party health care providers was contrary to the scheme of the Louisiana Workers' Compensation Act and not specifically granted by statute. Ferrier, 662 So.2d at 21-22.
[7] It is also telling that even though the phrase "a penalty" is used, Reddell and Williams recognize that LA.REV.STAT. ANN. § 23:1201(F) embodies more than one penalty because they agree that the statute allows an employee a separate maximum $2,000 penalty for failure to timely pay compensation benefits and another $2,000 penalty for failure to timely pay medical benefits. See n. 1, supra. Thus, by their own admissions, Reddell and Williams recognize that more than one penalty is provided.
[8] It appears that the use of the word disputed is superfluous. Under the provisions of LA. REV.STAT. ANN. § 23:1310(A), every claim presented to the OWC is the result of "a bona fide dispute."
[9] As Reddell and Williams point out, the penal statute does not cap the 12% penalty at $2,000.
[10] It is pointed out that an employer or insurer who discontinues payment of claims due, when such discontinuance is found arbitrary, capricious, or without probable cause, is subject to the payment of all reasonable attorneys' fees for the prosecution and collection of such claims. LA.REV.STAT. ANN. § 23:1201.2. Such an employer or insurer is not subject to the additional assessment of a penalty.
[11] The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death, to the persons dependent upon the employee for support so that these persons would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support,thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law. Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability.

Atchison, 10 So.2d at 788.
[12] Exemplifying such ability is the Third Circuit's rejection of Haynes's request for certain medical expense payments in the present case. In Haynes, the appellate court correctly observed:

We reject Haynes's contention that separate penalties should have been awarded for each of the medical bills incurred at Cabrini Hospital on the date of the accident and for the February 1, 2000 visit to Dr. Genoff and the related travel expenses. LUBA's actions regarding the Cabrini bills are essentially a single violation, and its failure to pay the bill for the visit to Dr. Genoff and the related travel expenses is essentially a single violation.
Haynes, 805 So.2d at 232.
[13] Initially in early 1999, Haynes treated with Dr. Mark Dodson. Later, LUBA scheduled an appointment for Haynes with Dr. Michael Genoff, an orthopedist with a subspecialty in hand surgery. Even though Haynes agreed to let Dr. Genoff perform the surgery, LUBA rejected Haynes's request. Ultimately, the choice of physician claim was submitted to an OWC hearing officer. Although the parties stipulated in a February 5, 2000 decision to have Dr. Genoff designated Haynes's choice of physician and that Dr. Genoff was authorized to perform the recommended surgery, the order was not signed until April 20, 2000 and arthroscopic surgery was not performed until June 12, 2000.
[14] As noted in the appellate court opinion, although LUBA classified Haynes as entitled to SEB from July 14, 1999 through June 11, 2000, it initially did not pay those benefits because it contended it did not receive the appropriate form setting forth his monthly report of earnings after it reclassified him. Haynes, 805 So.2d at 218.
[15] As pointed out in H. ALSTON JOHNSON, 13 LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE 744 (4th ed.2002), the standard for entitlement to rehabilitation services is not the same as the threshold for supplemental earning benefits. Whereas the employee seeking rehabilitation service must show he has suffered a compensable injury which precludes him from earning wages "equal to wages earned" before the injury, an injured worker who is able to earn 90% or more of his former wage is not entitled to supplemental earnings benefits.