PATRICK JOHNSON

VERSUS

CONAGRA POULTRY COMPANY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DIST. 2
PARISH OF NATCHITOCHES, NO. 10-05586
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**JIMMIE C. PETERS**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald D. Decuir, Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.


**AFFIRMED AS AMENDED.**


**Decuir, J., dissents for the reasons assigned by Judge Gremillion.**

**Gremillion, J., dissents and assigns written reasons.**

**Maurice Blake Monrose**
**Hurlburt, Monrose, Dartez & Ernest**
**P. O. Drawer 4407**
**Lafayette, LA 70502-4407**
**(337) 237-0261**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    Conagra Poultry Company

**George A. Flournoy**
**Flournoy & Doggett**
**P. O. Box 1270**
**Alexandria, LA 71309-1270**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Patrick D. Johnson**

PETERS, J.

This is the second appeal on a similar issue in this workers' compensation matter. The plaintiff, Patrick D. Johnson, appeals from the judgment of the workers' compensation judge (WCJ), awarding him a single penalty based upon numerous violations of the defendant, Conagra Poultry Company[1] (Conagra), of La.R.S. 23:1201(E). Although our prior decision limited Mr. Johnson to one penalty, we decline to follow that holding and increase his award of penalties and attorney fees.

## DISCUSSION OF THE RECORD

The facts in this matter are not disputed. Mr. Johnson injured his back while employed as a driver for Conagra. In 2008, he filed a disputed claim against Conagra, based upon, among other issues, its failure or refusal to pay for medications prescribed by his treating physician. In that instance, as here, Mr. Johnson alleged that he was entitled to a penalty for each time Conagra ignored requests for payment of the medication up to the maximum of $8,000.00. Following a hearing on the merits, the WCJ awarded Mr. Johnson $2,000.00 in penalties. Mr. Johnson appealed and a divided panel held that Conagra's failure to timely pay for the prescription medication was "a single, ongoing violation." *Johnson v. Conagra Poultry Co.*, 09-646 (La.App. 3 Cir. 12/9/09), 26 So.3d 982, *writ denied*, 10-350 (La. 4/16/10), 31 So.3d 1067.

In total, prescriptions were purchased by Mr. Johnson at Causey's Pharmacy (Causey's) on thirteen occasions between July 31, 2009 and January 20, 2010.[2] Causey's, who bills weekly, mailed statements for each purchase to Mr. Johnson's attorney and faxed copies to Sedgwick CMS (Sedgwick), Conagra's third-party

---

[1] Conagra is now known as Pilgrim's Pride

[2] The record indicates that Mr. Johnson purchased prescriptions on July 31, 2009; August 21, 2009; September 9, 2009; September 24, 2009; October 15, 2009; November 2, 2009; November 17, 2009; December 7, 2009; December 9, 2009; December 21, 2009; January 6, 2010; January 8, 2010; and January 20, 2010.

adjustor. Counsel for Mr. Johnson also forwarded several billing statements to Sedgwick, requesting immediate payment of amounts due.[3]

On June 28, 2010, Mr. Johnson filed a second disputed claim with the Office of Workers' Compensation, based on Conagra's failure to timely pay or authorize payment of medications prescribed by his treating physician. He further sought penalties, attorney fees, and legal interest. On June 29, 2010, Causey's faxed a statement containing all overdue payments to Sedgwick. Conagra answered by denying Mr. Johnson's claim.

This matter was submitted to the WCJ on the record. It was noted at the hearing that Conagra had previously paid Mr. Johnson $2,000.00 in penalties for violating La.R.S. 23:1201(E). Mr. Johnson stipulated that Causey's received the outstanding balance of $2,612.92 on January 24, 2011. After taking the matter under advisement, the WCJ issued an oral ruling, finding that the Mr. Johnson's claim is based on a single, ongoing violation of La.R.S. 23:1201(E), just as in the prior claim. The WCJ awarded Mr. Johnson $2,000.00 in penalties, $2,000.00 in attorney fees, and costs. Mr. Johnson filed a motion for a partial new trial, seeking an increase in attorney fees, which was denied. A judgment was rendered in this matter on May 11, 2011. Mr. Johnson appeals from this judgment.

On appeal, although Mr. Johnson failed to specify any assignments of error, as required by Rule 2-12.4, Uniform Rules—Courts of Appeal, he sets out two issues in his appellate brief:

> 1.    Did the WCJ err, as  a matter of law, in awarding only one $2,000.00 penalty, despite undisputed proof of multiple different and

---

[3] The record contains demand letters sent by Mr. Johnson's counsel to Sedgwick on January 29, 2009, March 17, 2009, and November 25, 2009. These represent requests for payments in the amounts of $136.87 for prescriptions filled on January 27, 2009; $417.43 for prescriptions filled between January 28-February 23, 2010; and $240.14 for prescriptions filled on November 17, 2009. Mr. Johnson's counsel also sent demand letters to Conagra's counsel on December 2, 2008 and June 28, 2010. He requested payments of $520.25, for prescriptions filled between December 2-16, 2009, and $2,612.92, for prescriptions filled between July 31, 2009-June 11, 2010.

separate claims for payment of medication expenses, the total of which, $2,612.92, remained unpaid at time of trial?  Stated otherwise, which decision, *Johnson I*  or *Burnett v. Village of Estherwood*, *2009-680 (La.App. 3 Cir. 12/9/09); 25 So.3d 997*[,] accords more fully with the precepts enunciated in *Fontenot v. Reddell, 2002-0439 (La. 1/14/03); 836 So*[.]*2d 14, 25.*

2.      Should the attorney fee award be increased?

## OPINION

### *Multiple Penalties*

Louisiana Revised Statutes 23:1201(E) provides, "Medical payments payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof."  In the case of a violation of La.R.S. 23:1201(E), La.R.S. 23:1201(F) provides:

> Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, of fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid . . . together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.  The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.  An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.  Penalties shall be assessed in the following manner:

> . . . .

> (2)    This Subsection shall not apply if the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control.

Mr. Johnson argues that rather than follow the holding set out by this court in *Johnson*, 26 So.3d 982, we should follow the holding reached by this court in *Burnett v. Village of Estherwood*, 09-680 (La.App. 3 Cir. 12/9/09), 25 So.3d 997.  Meanwhile, Conagra argues that the holding in *Johnson*, 26 So.3d 982, is the law of, not only the third circuit, but also of this case.

3

The law-of-the-case doctrine was set out by this court in *Hesse v. Champ Service Line*, 99-1259, pp. 3-4 (La.App. 3 Cir. 2/2/00), 758 So.2d 245, 248:

> The law-of-the-case doctrine concerns (a) the binding force of trial court rulings during later stages of a trial; (b) the conclusive effects of appellate rulings at the trial on remand; and (c) the rule that, ordinarily, an appellate court will not reconsider its own rulings of law on a subsequent appeal in the same case. *Barnett v. Jabusch*, 94-819 (La.App. 3 Cir. 2/1/95); 649 So.2d 1158. The doctrine is applied merely as a discretionary guide. *Id.* Reasons for application of the doctrine include the avoidance of indefinite relitigation of the same issue, the desirability of consistency of the result in the same litigation, and the efficiency and essential fairness to the litigants of affording a single opportunity for argument and decision of the matter at issue. *Id.*

As stated above, the application of the law-of-the-case doctrine is discretionary. However, this doctrine should not be applied in instances where its application will "effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96-1477, p. 6 (La.App. 3 Cir. 5/9/97), 693 So.2d 893, 896.

We find that applying our prior holding in this matter will result in an obvious injustice as Conagra will, once again, escape the consequences of its numerous violations of La.R.S. 23:1201(E). In *Fontenot v. Reddell Vidrine Water District*, 02-439, 02-442, 02-478, pp. 14-15 (La. 1/14/03), 836 So.2d 14, 25 (second alteration in original), the supreme court stated:

> [W]e find it consistent with the legislative intent to interpret "claim" as a demand for particular benefits as found by the appellate court. Such an interpretation is consistent with the other provisions of LA.REV.STAT. ANN. § 23:1201 and in accord with the purpose for the Legislature's inclusion of penalties and attorneys' fees in the scheme of workers' compensation law. In those instances where a claim is either not reasonably controverted or if nonpayment results from conditions under the control of the employer or insurer, this proviso for multiple penalties will address the recalcitrant employer or insurer and will encourage employers and their workers' compensation insurers to honor their continuing obligation to the injured worker. "[T]o conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker 'whole' but rather to discourage specific conduct on the part of the employer." *Haynes*, 805 So.2d at 231(quoting *Gay v. Georgia Pacific Corp.*, 32,653 (La.App. 2 Cir. 12/12/99), 754

4

So.2d 1101); *see also Sharbono [v. Steve Lang & Son Loggers*, 97-110 (La. 7/1/97)], 696 So.2d [1282,] 1386. Simply stated, without such an understanding of the statute, there would be nothing to leverage the obstinate employer or its insurer to comply with their statutory obligation to the injured worker.

In *Haynes v. Williams Fence and Aluminum*, 01-26, p. 24 (La.App. 3 Cir. 7/25/01), 805 So.2d 215, 229-30 (alteration in original), which the supreme court quoted with approval in *Fontenot*, 836 So.2d 14, this court stated:

> In *Fontenot v. Reddell Vidrine Water District*, 00-762 (La.App. 3 Cir. 2/21/01); 780 So.2d 1197, *writ granted*, 01-752 (La.5/11/01); 792 So.2d 1, this court held that, while an employee may receive separate penalties for both indemnity and medical benefits claims, the employee in the case at bar was entitled to receive only one penalty for the insurer's failure in two respects, *i.e.*, its miscalculation of indemnity benefits and its improper reduction of benefits. The author of the instant opinion dissented in *Fontenot*, stating in part:
>
> > Under La.R.S. 23:1201(F), it is the "[f]ailure to provide payment in accordance with this Section [La.R.S. 23:1201]" that "shall result in the assessment of a penalty." Pursuant to La.R.S. 23:1201(B), (C), and (D), "all such compensation then due" must be paid and it must be paid within the time specified. Additionally, pursuant to La.R.S. 23:1201(E), "[m]edical benefits payable" must be paid within the specified time. Thus, Subsections (B), (C), (D), and (E) essentially place two requirements on the employer/insurer—payment of the *correct amount* of benefits and *timely* payment of those benefits.
> >
> > An employer/insurer can violate these requirements in a number of ways. In the instant case, LWCC violated Subsection (B) by initially miscalculating the benefits and then again by improperly reducing TTD benefits to SEB. LWCC also violated Subsection (E) by failing to authorize emergency medical treatment. The majority suggests that the two separate violations of Subsection (B) give rise to only one penalty. In reaching this conclusion, the majority suggests that Mr. Fontenot has attempted to have the court "equate the word 'claim' with 'violation.'" While I concede that each instance of a continuing violation does not give rise to a new claim, each new claim requires a violation on the part of the employer/insurer. Importantly, when an employer/insurer miscalculates the benefits due, that is a violation which gives rise to a claim. Additionally, when that same employer/insurer improperly reduces the benefits being paid from TTD benefits to SEB, that transgression is a separate violation which gives rise to a separate claim. The

5

former action has nothing to do with the latter. In the matter before us, the workers' compensation judge found two separate violations which gave rise to two separate claims under La.R.S. 23:1201(F). I have difficulty seeing how it can be interpreted any other way.

Through La.R.S. 23:1201(F), the employee has a means of discouraging such violations and motivating the recalcitrant or indifferent employer/insurer to comply with its obligations. As quoted by the majority, *Williams v. Rush Masonry, Inc.*, 98-2271, p. 8 (La.6/29/99); 737 So.2d 41, 46, recognized that awards of penalties and attorney fees are "imposed to discourage indifference and undesirable conduct by employers and insurers."

The focus is on the *conduct* of the employer/insurer. An employer/insurer may exhibit indifference and undesirable conduct toward the employee in different ways, at different times and/or regarding different elements of an item of benefits to which the employee is entitled. However, as I appreciate the majority's interpretation, the employee may seek penalties to discourage the indifference and undesirable conduct of the employer/insurer only once concerning compensation benefits and only once concerning medical benefits. As such, the employer/insurer has carte blanche to behave as it wishes, and that without further consequence. Thus, the benefit/leverage given to the employee through La.R.S. 23:1201(F) is stripped away upon the first violation, and the employee is thereafter subject to the whim and caprice of the employer/insurer. Conceivably, an employer/insurer could initially refuse to pay mileage reimbursement due for medical travel, pay a $2,000.00 penalty in that regard, and then unreasonably delay payment of the more expensive medical services. In essence, the majority opinion extends the res judicata effect of the initial penalty award to all future violations by the employer/insurer, despite the employer/insurer's continuing obligation to provide benefits.

If, however, the majority opinion authorizes not just one penalty for the duration of the employer/insurer's obligation to pay benefits but authorizes one penalty for each 1008 claim that is filed, then the number of penalties the employee could recover would be controlled by the fortuity of the timing of the violations or his attorney's acumen in filing multiple 1008 forms for violations occurring within the same time frame. Thus, the employee encounters a form-over-substance situation, when it is the substance that should control, i.e., the employer/insurer's conduct, and not the form/timing of the presentation of the situation to a workers' compensation judge. A resourceful

> employee will be better served by filing separate 1008 forms for separate violations to preserve his penalty rights under La.R.S. 23:1201 for each individual claim. Of course, as argued by counsel for LWCC, the employer/insurer would surely seek consolidation of these claims, thus returning the injured employee to the penalizing effect of this majority decision. Of course, the employer/insurer would also raise the exception of res judicata, even for future actions, if penalized once.
>
> Essentially, the majority's holding chips away at the quid-pro-quo arrangement contemplated by the legislature when it limited the employee to workers' compensation benefits.

*Id.* at 1201-03 (alterations in original).

In *Burnett*, 25 So.3d 997, this court affirmed an award of multiple penalties for the defendant's underpayment/late payment of three mileage submissions. We held that "there were three separate mileage submissions which were either underpaid or paid late for different reasons. Multiple penalties for multiple violations are allowed by statute. *See* La.R.S. 23:1201(F)." *Id.* at 1001.

In its oral ruling, the WCJ, finding that this matter was indistinguishable from Mr. Johnson's prior claim, held that his present claim is a single, ongoing violation and awarded him $2,000.00 in penalties. We find that it is error for the WCJ to award only one penalty in this instance, especially as Conagra admitted to numerous violations of La.R.S. 23:1201(E). To award only one penalty will, as this court stated in *Haynes*, 805 So.2d 215, deprive Mr. Johnson of all leverage he might have against Conagra and leave him subject to Conagra's whim and caprice, as borne out by the instant claim. In this case, Conagra admitted to thirteen violations of La.R.S. 23:1201(E). Each violation entitles Mr. Johnson to penalties and reasonable attorney fees pursuant to La.R.S. 23:1201(F). Based on Conagra's admission of guilt, we find that Mr. Johnson is entitled to a penalty based on each of the thirteen violations of La.R.S. 23:1201(E). However, since La.R.S. 23:1201(F) limits the maximum amount

7

of penalties awarded pursuant to this section to $8,000.00, the WCJ's judgment is amended to increase the penalty awarded to Mr. Johnson from $2,000.00 to $8,000.00. Based on this finding, we further amend the WCJ's judgment to increase the attorney fee award from $2,000.00 to $5,000.00.

## DISPOSITION

Based on the foregoing findings, the judgment of the WCJ is amended to award Mr. Johnson $8,000.00 in penalties and $5,000.00 in attorney fees based on Conagra's violations of La.R.S. 23:1201(E). Costs of this appeal are assessed to the defendant, Conagra Poultry Company.

**AFFIRMED AS AMENDED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-986

PATRICK JOHNSON

VERSUS

CONAGRA POULTRY COMPANY

**GREMILLION, Judge, dissents and assigns written reasons.**

The majority has issued a cogent and scholarly opinion concluding with a determination that thirteen violations of the relevant statutory law necessitates multiple penalties. However, a previous majority of this court, in considering the very same issues presented here by the very same parties determined that there were, indeed, no multiple violations. Rather there was "a single, ongoing violation." *Johnson v. Conagra Poultry Company*, 31 So.2d 1067. While that court's analysis and conclusions were different from this majority opinion, they were no less cogent and no less scholarly.

Appellee has urged that we affirm the worker's compensation judge based primarily on the employment of the law of the case doctrine, and I agree. There are numerous reasons for the development and application of this doctrine to include the promotion of consistency and essential fairness. *Cree Oil Company v. Home Insurance Company*, 653 So.2d 620. However, I would respectfully suggest that the primary reason for the doctrine is the promotion of judicial efficiency by the avoiding litigation over the same issues time and again.

In this matter, one can imagine Mr. Johnson and Conagra returning to this court again and again, trading back and forth their roles as appellant and appellee, making the same arguments, and expecting different rulings from new and

different panels as they have already done twice. Obviously, it is this type of panel-shopping repetition that the law of the case doctrine was developed to avoid.

It is true that the doctrine should not be applied when doing so would result in "palpable error" or "manifest injustice." *Petition of Sewerage and Water Bd. of New Orleans*, 278 So.2d 81 (La. 1973). However, in this case, the ruling of the prior panel of this court was neither palpably erroneous nor was it manifestly injust. It was merely different. Accordingly, I respectfully dissent, finding that the worker's compensation judge properly applied the law of the case doctrine and his award of a single penalty should be affirmed.