839 So.2d 380 (2003)
Steven MOORE
v.
CITY OF NEW ORLEANS, Public Works.
No. 2002-CA-1036.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 2003.
*382 Diane R. Lundeen, Lewis & Caplan, APLC, New Orleans, LA, for Plaintiff/Appellee.
Daryl J. Daigle, Wayne J. Fontana, Courtenay, Hunter & Fontana, L.L.P., New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
Defendant, the City of New Orleans ("the City"), appeals a judgment of the Office of Workers' Compensation rendered in favor of plaintiff/claimant, Steven Moore, awarding him medical and indemnity benefits, penalties, and attorney's fees. Plaintiff answers the appeal, seeking additional supplemental earnings benefits, penalties, and attorney's fees.
On 14 July 2000, plaintiff, a laborer employed by the City of New Orleans Public Works Department, injured himself lifting a concrete drainage pipe while in the course and scope of his employment. Immediately following the accident, the City *383 sent plaintiff to Concentra Medical Center where Dabney M. Ewin, M.D. ("Dr. Ewin") examined him. Dr. Ewin diagnosed plaintiff's injury as lumbar strain and recommended that he undergo physical therapy. Plaintiff underwent physical therapy at Concentra Medical Center on 14, 17, 18, 19, and 20 July 2000. After Dr. Ewin re-examined plaintiff at a follow-up visit on 18 July 2000, he prescribed additional physical therapy and allowed plaintiff to return to work with the following restrictions: (1) no repetitive lifting over 20 pounds; (2) no prolonged standing and/or walking longer than 6 hours; (3) no bending greater than 4 times per hour; (4) no pushing and/or pulling over 20 pounds of force; and, (5) no squatting and/or kneeling. Plaintiff never returned to work.
On 13 September 2000, plaintiff, choosing his own treating physician, went to the office of Stewart E. Altman, M.D., F.A.C.S. and Associates, where Mary Mathai, M.D., an associate of Dr. Altman, treated him. Dr. Altman's office contacted the City seeking authorization for plaintiff's treatment; the City refused the request. Nevertheless, Dr. Mathai examined plaintiff and diagnosed him with having lumbar strain as a result of lifting the concrete pipe. Dr. Mathai prescribed medication, as well as moist heat packs, massages, and physical therapy. Plaintiff continued to receive treatment at Dr. Altman's office on a weekly basis from 13 September 2000 through 21 December 2000. During that time, Dr. Mathai prescribed a lumbar corset for plaintiff, but the City refused to authorize payment for it. Dr. Mathai determined that plaintiff was temporarily totally disabled from work for the periods 13 September 2000 through 26 September 2000, 18 October 2000 through 8 November 2000, 8 November 2000 through 20 December 2000, and 20 December 2000 through 11 January 2001. On 10 April 2001, plaintiff returned to work at a new place of employment, earning more than ninety percent of his pre-injury wage.
Because the City failed to pay workers' compensation benefits and refused to approve Dr. Altman and his associates as his treating physicians, plaintiff filed a disputed claim with the Office of Workers' Compensation on 20 September 2000.
At the 12 October 2001 trial on the merits, no witnesses testified; the parties, however, submitted plaintiff's medical records and other documents into evidence. The parties stipulated that plaintiff was injured while in the course and scope of his employment; plaintiff's average weekly wage was $222.65; plaintiff's workers' compensation rate was $148.43 per week; plaintiff's medical expenses were $1,323.00; plaintiff's mileage reimbursement totaled $54.88; and, if workers' compensation benefits were due plaintiff, temporary total disability was $2,078.02 and supplemental earnings benefits were $1,632.73.
The workers' compensation judge rendered judgment in favor of plaintiff, awarding him temporary total disability benefits for the periods 13 September 2000 through 26 September 2000, 18 October 2000 through 18 November 2000, 18 November 2000 through 20 December 2000, and 20 December 2000 through 11 November 2001[1], in the amount of $148.83 per *384 week, a total of $2,078.02 plus legal interest. As to supplemental earnings benefits, the trial judge awarded $148.83 per week for the periods 27 September 2000 through 18 October 2000 and from 11 January 2001 through 10 April 2001 plus legal interest. The trial judge also awarded plaintiff his total medical expenses, including mileage of $54.88. Finding the City failed to timely pay temporary total disability benefits and supplemental earnings benefits in violation of La. R.S. 23:1201 B and C, the trial judge assessed a penalty[2] against the City pursuant to La. R.S. 23:1201 F in the amount of twelve percent (12%) of the unpaid compensation or fifty dollars ($50.00) for each calendar day, whichever was greater, for each calendar day in which the compensation remained unpaid, not to exceed a maximum of two thousand dollars ($2,000.00) in the aggregate. In addition to all costs, the trial judge ordered the City to pay a total of $7,500.00 in attorney's fees for violations of La. R.S. 23:1201 B, C, and E.[3]
It is well settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest errorclearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, 97-0688 at p. 4, 704 So.2d at 1164. Where two permissible views of the evidence exist, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840 at p. 8, 696 So.2d at 556.
At the outset, we address the issue(s) of whether plaintiff is entitled to temporary total disability benefits and/or supplemental earnings benefits and, if so, for what period(s) of time. The City, in its first assignment of error, argues that the trial court erred in awarding plaintiff supplemental earnings benefits for the period 11 January 2001 through 10 April 2001. Similarly, in its second assignment of error, the City argues that the trial court erred in awarding plaintiff supplemental earnings benefits for the period 27 September 2000 through 18 October 2000 where it also awarded him temporary total disability benefits within the period 13 September 2000 through 11 January 2001. The City contends plaintiff failed to satisfy his burden of proving entitlement to either temporary disability benefits or supplemental earnings benefits within that period. In answering the appeal, plaintiff argues that the trial court erred in failing to award him supplemental earnings benefits from the date of his injury, 14 July 2000 through 12 September 2000, the day before his initial examination at Dr. Altman's office.
*385 To establish entitlement to workers' compensation benefits, a claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979). For an employee to establish entitlement to temporary total disability benefits, he must prove by clear and convincing evidence, unaided by an presumption of disability, that he is physically unable to engage in any employment, regardless of its nature, and including employment while working in pain. La. R.S. 23:1221(1)(c). Coats v. American Telephone and Telegraph Co., 95-2670, p. 8 (La.10/25/96), 681 So.2d 1243, 1247. The burden of proving the existence of a fact by clear and convincing evidence requires that its existence be highly probable, that is, much more probable than its non-existence. Scherer v. Interior Plant Design, 98-702, pp. 4-5 (La.App. 3 Cir 10/28/98), 724 So.2d 797, 800.
The purpose of supplemental earnings benefits is to compensate an injured employee for the wage earning capacity he has lost as a result of his accident. Banks, 96-2840 at p. 8, 696 So.2d at 556. Pursuant to the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Seal, 97-0688 at p. 8, 704 So.2d at 1166. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for supplemental earnings benefits or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Daigle, 545 So.2d at 1009. Actual job placement is not required. Seal, 97-0688 at p. 8, 704 So.2d at 1166. The amount of an award of supplemental earnings benefits is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. La. R.S. 23:1221(3)(a).
As previously mentioned, the parties in this case stipulated that plaintiff was injured in an accident while in the course and scope of his employment. To satisfy his burden to prove that the work related accident resulted in his inability to engage in any employment, thereby entitling him to temporary total disability benefits, plaintiff introduced into evidence his medical records from Dr. Altman's office. Included among the medical records was a report prepared by Dr. Mathai, dated 26 December 2000, wherein Dr. Mathai stated that at the initial office visit on 13 September 2000, plaintiff was diagnosed with lumbar sprain that was causally related to the accident. At that time, Dr. Mathai prescribed medication, moist heat treatments, and physical therapy. The report expressly stated, "The patient was put on full disability for two weeks" or from 13 September *386 2000 to 26 September 2000. Plaintiff saw Dr. Mathai again on 27 September 2000, complaining of abdominal soreness and pulling. Although Dr. Mathai noted that plaintiff's lower back was improving from the therapy, he detected a hernia in plaintiff's mid abdominal wall and numbness in his left knee. Dr. Mathai prescribed additional medication and physical therapy, yet allowed plaintiff to return to light duty work for a three-week period that began 27 September 2000 and ended 18 October 2000.
Plaintiff returned to Dr. Mathai on 18 October 2000, complaining of abdominal pain. At that visit, plaintiff informed Dr. Mathai that he had not returned to work because light duty work was unavailable. Because plaintiff's lower back condition remained the same and his left knee continued to exhibit weakness, Dr. Mathai concluded plaintiff was fully disabled and unable to work from 18 October 2000 through 8 November 2000. At an office visit on 8 November 2000, plaintiff again complained of abdominal pain. Finding no improvement in either plaintiff's lower back or left knee, Dr. Mathai continued to prescribe physical therapy and pain medication. He also placed plaintiff on full disability for three additional weeks from 8 November 2000 through 29 November 2000.
At his follow up visit on 29 November 2000, plaintiff complained of lower back and abdominal pains. Although plaintiff exhibited lower back pain and left knee weakness while walking, a lower back examination revealed some improvement, as evidenced by ten degrees increase in flexion from his previous visit. Nonetheless, Dr. Mathai continued the pain medication, prescribed more physical therapy, and scheduled a follow up appointment. Plaintiff remained on full disability.
When plaintiff returned to see Dr. Mathai on 21 December 2000, both plaintiff's lower back and abdomen showed considerable improvement, yet his left knee still exhibited some weakness. Dr. Mathai again prescribed moist heat therapy and pain medication, but discontinued physical therapy because the back examination revealed an increase in flexion to ninety degrees. Nevertheless, Dr. Mathai continued plaintiff on full disability from 21 December 2000 to 11 January 2001, plaintiff's next scheduled appointment date. The medical records indicate plaintiff last obtained treatment for his work related injury on 21 December 2000.
Regarding temporary total disability benefits, the City offered no evidence to refute Dr. Mathai's report that plaintiff was fully disabled and unable to work from 13 September through 26 September 2000 and again from 18 October 2000 through 11 January 2001. Plaintiff's medical records from Concentra Medical Center, which the City introduced into evidence, make no reference to plaintiff's injury after 21 July 2000. Although the City argues that plaintiff failed to mention an abdominal injury in his disputed claim form or at his first visit to Dr. Altman's office, Dr. Mathai's report specifically stated that "[a]ll symptoms and findings [were] causally related to the accident." Nonetheless, even if plaintiff's abdominal injury was not related to the accident, Dr. Mathai's report indicates that plaintiff's back injury alone was enough to preclude him from working. After reviewing the evidence in the record, we find no error in the workers' compensation judge's award of temporary total disability benefits.
Plaintiff also relied on Dr. Mathai's report and other medical records to satisfy his burden of proof as to his entitlement to *387 supplemental earnings benefits. Dr. Mathai's report and other documentation from Dr. Altman's office disclose that plaintiff was able to return to work with some restrictions for the period 27 September 2000 through 18 October 2000, but failed to do so because no light duty work was available. Once plaintiff put forth this evidence, the City had to produce evidence to show that plaintiff was physically able to perform a certain job and that the job was offered to him or that a job was available to him in his community or reasonable geographic location. The City offered no such evidence. In the absence of any evidence that demonstrates the City offered light duty work to plaintiff or that light duty work was available in his community for the period 27 September 2000 through 18 October 2000, we cannot say the workers' compensation judge erred in awarding plaintiff supplemental earnings benefits for that period of time. Although the judge awarded plaintiff temporary total disability benefits for two weeks prior to 27 September 2000 and for twelve weeks after 18 October 2000, the judge was not precluded from awarding supplemental earnings benefits for the period 27 September 2000 through 18 October 2000 where the medical evidence indicated that plaintiff was able to do light duty work and temporary total disability benefits had not been awarded for that same period.
We do, however, find merit to the City argument that the workers' compensation judge erred in awarding plaintiff supplemental earnings benefits for the period 11 January 2000 through 10 April 2001. Plaintiff's medical records indicate that Dr. Mathai last examined plaintiff on 21 December 2000, at which time he classified plaintiff as fully disabled and unable to work from 21 December 2000 to 11 January 2001. Plaintiff was scheduled to return to Dr. Mathai on 11 January 2001, but failed to do so. Plaintiff offered no evidence that he was unable to return to work after 11 January 2001 or that his work related injury prevented him from earning ninety percent or more of his average pre-injury wage. In the absence of such evidence, we find that the workers' compensation judge erred in awarding plaintiff supplemental earnings benefits after 11 January 2001.
In answering the appeal, plaintiff argues that that workers' compensation judge erred in not awarding him supplemental earning benefits from 14 July 2000 through 12 September 2000. We agree. Plaintiff's medical records from Concentra Medical Center, the City's choice of physicians, indicate plaintiff was examined and/or underwent physical therapy on 14, 17, 18,19, 20, and 21 July 2000. Dr. Ewin determined that plaintiff could return to work with various restrictions that severely limited his ability to engage in his pre-injury employment. Dr. Mathai, on the other hand, determined that plaintiff was fully disabled as a result of the work related injury when he first examined him on 13 September 2000. In any event, the City offered no evidence to refute plaintiff's proof that he was unable to engage in his pre-injury employment. Nor did the City present evidence that it had offered light duty work within plaintiff's restrictions to him or that such a position was available. Thus, plaintiff is entitled to receive supplemental earnings benefits for the period 14 July 2000 through 12 September 2000.
We now address the second issue raised in plaintiff's answer to the appeal, i.e., whether the workers' compensation judge erred in awarding plaintiff a penalty[4] of only $2,000.00 for the City's failure to authorize *388 and pay timely all medical benefits and to pay timely all indemnity benefits. Plaintiff argues that he is entitled to a separate penalty for each of the following violations the City was found to have committed pursuant to the Workers' Compensation Act: (1) failure to pay temporary total disability benefits; (2) failure to pay supplemental earnings benefits; (3) failure to authorize treatment by Dr. Altman's office; (4) failure to pay medical expenses; and (5) failure to pay for a lumbar corset.
The penalty provision of La. R.S. 23:1201 provides, in part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claims ... (Emphasis added).
Plaintiff contends that the addition of the phrase "together with reasonable attorney fees for each disputed claim" in the first clause of paragraph F and of the words "any disputed claim" after the phrase "in the aggregate" in the second clause indicates the legislature's intent to permit a penalty of $2,000.00 for each sanctionable violation. In determining whether plaintiff's contention has merit, a review of the legislative history of La. R.S. 23:1201 is necessary.
Prior to 1 January 1993, La. R.S. 23:1201 made no mention of a penalty for the non-payment of medical benefits. Section 1201 B merely provided that the first installment of compensation was to be due on the fourteenth day after the employer or insurer had knowledge of the injury and the penalty provision of Section 1201 E allowed a twelve percent penalty to be imposed if an installment of compensation was not paid within the proper time period. Acts 1992, No. 1003, § 1, effective 1 January 1993, amended La. R.S. 23:1201 E to impose a penalty for the failure to pay medical benefits and to provide for either the penalty of twelve percent of any unpaid compensation or fifty dollars per calendar day, not to exceed a maximum of $2,000.00, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid. However, the time limits set forth in La. R.S. 23:1201 B, C, and D related to compensation payments and not medical payments. Nonetheless, it is apparent that in adding the fifty dollar per day penalty, the legislature intended to benefit the employee whose twelve percent penalty yielded only a small penalty recovery.
By Acts 1995, No. 1137, § 1, effective 29 June 1995, the legislature established a separate time period in which medical benefits were to be paid. It rewrote La. R.S. 23:1201 E and redesignated that which previously had been in that subsection, with major modifications, as what is now La. R.S. 23:1201 F. Although the current statute still provides for relief for unpaid compensation and medical benefits, it does so in terms of disputed claims.
La. R.S. 23:1201 F is penal in nature and, therefore, must be strictly construed. See Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. A reasonable interpretation of the 1995 amendment is that the legislature intended to clarify that separate penalties could be awarded for both unpaid compensation and medical benefit claims. The statute as amended in 1995 makes no *389 provision that a separate penalty is available for every single violation of the act.
In Fontenot v. Reddell Vidrine Water District, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.1/14/03), 836 So.2d 14, the Louisiana Supreme Court interpreted the penalty provision of La. R.S. 23:1201 F to allow for multiple penalties for multiple violations regarding indemnity and medical benefits claims. In the case at bar, we find the trial court erred in its determination of that which plaintiff is entitled to recover as penalties. We hold that plaintiff is entitled to recover a penalty, as provided for in La. R.S. 23:1201 F, for each of the five violations that plaintiff has asserted.
Finally, we address the issue of the attorney's fees awarded in this case. The City argues that the workers' compensation judge's award of $7,500.00 in attorney's fees to plaintiff is excessive in light of plaintiff's counsel's admission at trial that her fees of $125.00 per hour totaled $3,387.50 in the instant matter. In answering the appeal, plaintiff seeks an increase in the attorney's fees awarded, arguing that his counsel expended additional time on his case after the 12 October 2001 trial, including time on this appeal.
Awards of attorney's fees in a workers' compensation cases are penal in nature and are intended to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. Although the benefits provisions in the workers' compensation act are to be liberally construed, penal statutes are to be strictly construed. Id. at p. 9, 737 So.2d at 46. The penalty and incentive to act in a particular manner provided by an award of attorney's fees lies in the imposition of the fees rather than in the amount of the fees awarded. Langley v. Petro Star Corp. of La., XXXX-XXXX, p. 9 (La.6/29/01), 792 So.2d 721, 726. Nonetheless, even though the primary consideration in the imposition of attorney's fees is to discourage certain offensive behavior on the part of the employer or insurer, the amount of statutory attorney's fees awarded is intended to fully compensate the employee's attorney, thereby benefiting the employee, for his services rendered in connection with the litigation. Id. at p. 10, 792 So.2d at 727.
In the instant case, the workers' compensation judge awarded plaintiff attorney's fees of $5,000.00 for the City's failure to pay temporary total disability and supplemental earnings benefits in addition to $2,500.00 for its failure to pay medical benefits. The evidence in the record reflects that the City neither reasonably controverted plaintiff's claims for indemnity and medical benefits nor demonstrated that nonpayment of the benefits resulted from conditions beyond its control. Thus, we cannot say the trial judge erred in awarding plaintiff attorney's fees pursuant to La. R.S. 23:1201 F. Regarding the amount of attorney's fees awarded, the record reflects that plaintiff's counsel acknowledged at trial that her fees in this matter totaled $3,387.50. It further reflects that plaintiff's counsel expended additional time on the case after the trial, which included preparing a post trial memorandum for the workers' compensation judge, corresponding via telephone and mail with all interested parties, attending several post trial conferences, as well as answering the City's appeal. The City, however, has been successful in appealing the award of supplemental earnings benefits for the period 11 January 2001 through 10 April 2001. Viewing the entire record before us, we find that the total award of $7,500.00 for attorney's fees to plaintiff fully compensates plaintiff's counsel for her services rendered in *390 connection with this litigation. Thus, we decline to disturb the workers' compensation judge's award of attorney's fees.
Accordingly, for the reasons stated herein, the judgment of the workers' compensation judge is reversed, in part, insofar as it awarded plaintiff supplemental earnings benefits for the period 11 January 2001 through 10 April 2001. The judgment is amended, in part, to award plaintiff supplemental earnings benefits in the amount of $148.43 per week for the period 14 July 2000 through 12 September 2000 and penalties as provided for in La. R.S. 23:1201 F for each of five violations. And as amended, we affirm the judgment.
REVERSED IN PART; AMENDED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] The workers' compensation judgment erroneously states, in part, that temporary total disability benefits were due for the periods 18 October 2000 through 18 November 2000, from 18 November 2000 through 20 December 2000, and from 20 December 2000 through 11 November 2001. The record reflects and it is undisputed that the correct periods were 18 October 2000 through 8 November 2000, 8 November 2000 through 20 December 2000, and 20 December 2000 through 11 January 2001.
[2] The trial court's judgment is unclear as to whether an award of one or two penalties was made. The issue is discussed in more detail infra.
[3] The workers' compensation judgment also erroneously states, in part, that attorney's fees of $5,000.00 are awarded to plaintiff for the City's "[v]iolation of La. R.S. 23:1202 B, C, or D," rather than the statute at issue, La. R.S. 23:1201 B and C, relative to the failure to timely pay temporary total disability benefits and supplemental earnings benefits.
[4] See footnote 2 above.