SUSAN M. CHEHARDY, Chief Judge.
Defendant, Glazer’s Distributors of Louisiana (“Glazer”), appeals a judgment of the . Office of Workers’ Compensation (“OWC”) awarding plaintiff, Patricia Wilson, workers’ compensation benefits for a disability she sustained in a 2013 work-related accident, .as well as penalties and attorney’s fees. For the reasons that follow, we affirm the judgment in part, amend it in part, and affirm as amended.
*895 FACTS AND PROCEDURAL HISTORY
In May of 2012, Patricia Wilson was employed on the bottling line at Glazer, where she packaged bottles of liquor into boxes on a conveyor belt. The physical demands of this job entail bending, overhead reaching, lifting, pushing, and pulling. Ms. Wilson worked four days a week from 5:30 p.m. until 4:00 a.m.
Around 1:00 a.m. on May 15, 2012, Ms. Wilson was working on the line when she tripped on a rubber floor mat, fell backwards, and landed on the floor, striking the right side of her back. She did not finish her shift and sought medical care later that day with Dr. Timothy Lavin. Dr. Lavin diagnosed Ms. Wilson with contusions to her gluteal back, right shoulder, and hip, as well as a cervical strain. The doctor prescribed her several medications and recommended ice therapy. After about two weeks of this treatment, Ms. Wilson returned to work on May 30, 2012. At her next visit with Dr. Lavin, she complained that her symptoms had worsened. As a result, the doctor restricted her activity and prescribed physical therapy in addition to the medication and ice regimen. At her next visit on June 18, 2012, Ms. Wilson advised Dr. Lavin that she was feeling better; and at her request, Dr. Lavin recommended Ms. Wilson return to regular duty on the bottle line.
At her next visit with Dr. Lavin on July 6, 2012, Ms. Wilson complained of “burning” in her right shoulder “after prolonged use.” But she continued on regular duty and on July 13, 2012, Dr. Lavin found she was improving overall despite “persistent intermittent residual soreness to the right shoulder area.” On July 20, 2012, the doctor found “residual achiness -in the shoulder at times and some trapezial tightness.” And at her last-visit with Dr. Lavin on July 26, 2012, the doctor found that Ms. Wilson had “some residual soreness in the lateral deltoid area several days ago, but otherwise, feels fine.” Dr. Lavin concluded Ms. Wilson was symptom-free and discharged her accordingly.
Over the next year, as Ms. Wilson continued at regular duty, she noticed pain in her right shoulder and the right side of her neck while reaching overhead, lifting, and pushing. To relieve this pain, Ms. Wilson took medication and applied ice packs to the painful areas. Able to manage the pain, Ms. Wilson did not inform her supervisors of this, but complained to several of her co-workers. Clara Schenall, Ms. Wilson’s co-worker .and sister, testified that Ms. Wilson complained of- pain in her neck and arm.in the year after her 2012 injury. Likewise, Alloyusis. Parker, another of- Ms.. Wilson’s co-workers, testified that Ms. Wilson.was ‘always” .complaining of shoulder and neck. pain. Although Mr. Parker conceded pain, was part of the job on the bottle line, he clarified- that employees ordinarily complained of pain, in their hands, fingers, and knees. Ms. Wilson’s complaints of shoulder,and neck pain were atypical.
Glazer averages 13,000 bottles per day. During the holidays or busy periods, the number can climb into the range of 18,000 to 20,000 bottles per day. Mondays and Thursdays are generally the easier'days of the week. On July 8, 2013, a Monday, Glazer processed 8,675 bottles — considered an easy day.
On July 8, 2013, the line was two people short, requiring Ms. Wilson and other employees to pick up the slack. Ms. Wilson explained that this required more pulling, more walking, and more pushing. Elaine Dubose, another co-worker, - also testified that the shorthanded crew results in more walking and more pulling. On the other hand; Christopher Murray, the warehouse supervisor, testified that on a day as light as July 8, even with a shorthanded crew, *896 an employee .would only have to do “a little more, walking.” Likewise, David Duhon, the night manager, testified there was no reason for an employee on the line to work considerably harder under such circumstances.
In any event, Ms. Wilson experienced pain in her right shoulder and on the right side of her neck during her shift that night.. She completed her shift but did not report her pain to any supervisors. Once home, she took medication, rubbed her shoulder down in a hot shower, and iced it.
Ms. Wilson awoke the next morning in much more pain and called in sick to work. The pain had not subsided on July 10, so she again called in sick. Oh July 11, Ms. Wilson.’explained to her supervisor, Mr. Duhon, that she was experiencing pain in her arm and neck. Mr. Duhon advised her to stay home and take care of herself. Thereafter, each day Ms. Wilson was unable to réport to’ work, she informed Mr. Duhon that her arm was still bothering her. Ms. Wilson continued to utilize her sick days, but as the days mounted, she sought advice from management about how to proceed. After Ms. Wilson’s repeated unsuccessful attempts to speak with certain personnel and receive guidance on the matter, Nathan Aronson, Glazer’s claims manager and supervisor, finally addressed" the matter and authorized Ms. Wilson to see Dr. Lavin, which she did on July 31, 2013.
At this visit, Ms. Wilson reported that since her last visit of July 26, 2012, she had experienced “some intermittent activity-related soreness to the shoulder area [and -that the] pain tends to worsen during peak operation times.” Dr. Lavin’s report reflected that her pain “worsened acutely when she woke up on [July-9, 2013, having felt] some pain while performing overhead pushing and pulling ... on [July 8, 2013].” She explained to Dr. Lavin that “toward the- end of [that] shift her shoulder was hurting much more.” Dr. Lavin diagnosed her with a tom rotator cuff and right tra-pezial strain, which he. believed to be unrelated to her 2012 injury.
On August 1, 2013, Ms. Wilson provided a statement to Glazer’s workers’ compensation adjuster, Gallagher Bassett. At her next visit with Dr. Lavin on August 5, 2013, Ms. Wilson did not report any improvement. She continued to experience shoulder and trapezial pain such that she was unable to lift her arm overhead. These symptoms had not abated at her next visit on ’August 12, 2013, at which point Dr, Lavin referred Ms. Wilson to Dr. Douglas Lurie, an orthopedic surgeon. Meanwhile, by letter dated August 15, 2013, Gallagher Bassett advised Ms. Wilson that her workers’ compensation claim was denied because her condition appeared tó be the result of “gradual deterioration” rather than an “accident” as defined under workers’ compensation law.
Ms. Wilson first met with Dr. Lurie on September 10, 2013 and remained under his care until March 20, 2014. Throughout this treatment, Ms. Wilson complained of persistent pain in her right shoulder. Like Dr. Lavin, Dr. Lurie also found evidence of a tom rotator cuff and cervical radiculopathy (ie., nerve damage 'in the neck). Dr. Lurie found the cause of Ms. Wilson’s condition to be '“multi-factorial”: he could not state with any definitive certainty that Ms. Wilson’s continued complaint of pain in her right shoulder was or was not work-related. He acknowledged that her condition displayed degenerative characteristics, in that it worsened over the period of time that he treated her. But he also acknowledged that her 2012 injury and the repetitive physical demands of. her job could not be ruled out as significant contributory factors to her condition.
*897 While under Dr. Lurie’s care, on December 11, 2013, Ms. Wilson filed a Form 1008 Disputed Compensation Claim with the Office of Workers’' Compensation. The matter proceeded to trial on March 26, 2015.
On May 11, 2015, the Office of Worker’s Compensation issued its judgment, in which it ruled: Ms. Wilson suffered a new accident and injury in the course and scope of her employment on July 8, 2013; Ms. Wilson is entitled to temporary total disability benefits from July 8, 2013 to the present and continuing pending further medical treatment; Glazer is responsible for medical expenses related to Ms. Wilson’s treatment by Dr. Lavin and Dr, Lu-rie to date, subsequent to July 8, 2013 and is further required to authorize treatment recommended by Dr. Lurie relative to Ms. Wilson’s right shoulder and to authorize an evaluation by a neurosurgeon as recommended by Dr. Lurie for Ms. Wilson’s injury to her cervical, spine; Glazer is assessed a penalty of $8,000.00 to Ms. Wilson for denying the compensability of the claim without probable cause, pursuant to La. R.S. 23:1201(1); Glazer is assessed a penalty of $8,000.00 for failure to pay wage benefits, medical care, and authorize recommended treatment on numerous occasions, pursuant to La. R.S. 23:1201(F); Ms. Wilson’s counsel is entitled to an award of attorney’s fees of $8,000.00 pursuant to La. R.S. 23:1201; and Ms. Wilson is entitled to all costs of the proceedings arid interest on any past-due benefits owed.
Glazer appeals this judgment.
On appeal, Glazer submits seven assignments of error: (1) the OWC erred in finding Ms. Wilson suffered a new accident and injury in the course and scope of her employment on July 8, 2013; (2) the OWC erred in finding Ms. Wilson’s injury was not the cause of. natural degeneration; (3) the OWC erred in overruling its exception of prescription; (4) the OWC erred in holding Ms. Wilson is entitled to disability benefits from. July 8, 2013; (5) the OWC erred in assessing penalties under. La. R.S. 23:1201(F); (6) the OWC erred in assessing penalties under La. R.S. 23:1201(1); and (7) the OWC erred in awarding attorney’s fees. Ms. Wilson‘answered the apr peal, seeking appellate, attorney’s fees and costs of the appeal.
DISCUSSION
 An employee seeking workers’ compensation benefits must prove “personal injury by accident arising out of and in the course of his employment.”- La. R.S. 23:1031(A). An “accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration Or progressive degeneration.” La. R.S. 23:1021(1). Where the'employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during , the performance of customary or routine work activities, the employee has established an “accident” within the meaning of La. R.S. 23:1021(1). Garcia v. Rouses Enter., 15-0007 (La.App. 5 Cir. 5/14/15), 470 So.3d 1157, 1160.
The employee in a workers compensation action has the burden of proving a" work-related accident by a preponderance of the evidence. Garcia, supra. An employee may prove that an unwitnessed accident occurred in the course and scope of his bmployment by his testimony aloné if the eihployee can prove (1) no other evidence discredits or casts serious doubt upon the employee’s version of the incident; and (2) the employee’s testimony is corroborated by the cireum- *898 stances following' the alleged incident. Id. Corroboration of the employee’s'testimony-may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence.- Id.
In determining whether an employee has discharged his burden of proof, the fact-findér “should accept as true a witness’’ uncóhtradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony.” Garcia, supra. The fact-finder’s determination as - to whether the employee’s testimony is credible and whether the employee has discharged his burden of proof are factual determinations that should -not be- disturbed on appellate review unless clearly wrong or manifestly erroneous. Id. If the trial court’s findings are reasonable in light of the entirety of the record, the appellate court may not reverse. Id. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Id.
In this case, -Ms. Wilson testified that a marked increase in pain suddenly arose on July 9, 2013, the morning after she worked an increased workload. Although testimony was offered to suggest that Ms. Wilson’s workload on July 8, 2013 was not a significant increase, as the fact-finder, the OWC was permitted to accept- Ms. Wilson’s version of events and reject Glazer’s. Additionally, Ms. Wilson’s version is corroborated by the medical evidence and the testimony of her co-workers. Therefore, in view of the record before us, we cannot find that the OWC manifestly erred in concluding Ms. Wilson sustained an injury by accident on July 8, 2013. Glazer’s first and second assignments of error are without merit.
In its third assignment of error, Glazer argues that the OWC erred in overruling its exception of prescription. On the morning of trial, the defense orally submitted that any claim for temporary total disability benefits relative to Ms. Wilson’s 2012 injury is prescribed pursuant to La. R.S. 23:1209. The OWC overruled this exception when it determined Ms. Wilson was entitled to benefits for the new accident and injury she suffered on July 8, 2013. As stated above, we find no manifest error in .this finding. For this reason, we likewise- conclude that the OWC did not err in overruling the exception of prescription. In addition, the peremptory exception of prescription must be specially pleaded through a formal, written excep-tion. Thomas v. Hollywood Casino, 44,271 (La.App. 2 Cir.2009), 13 So.3d 717, 723; see also La. C.C.P. arts. 924 and 927(B). Arguing the issue either orally or in a memorandum to the court does not suffice. Thomas, supra. For this reason too, the OWC did not err in overruling Glazer’s oral exception of prescription. This assignment of error lacks merit.
In Glazer’s fourth assignment of error, it argues that the OWC erred in holding Ms., Wilson was entitled to benefits from July 8,,.2013, As we found above, Ms. Wilson has proven her disability stems from the injury she sustained on July 8, 2013. Because this disability continued for more than two weeks, she is entitled to benefits from the date of her -injury. See La. R.S. 23:1224. This assignment of error is without merit.
In its fifth, sixth, and seventh assignments of error, Glazer argues that the OWC erred in assessing penalties and attorney’s fees under La. R.S. 23:1201(F) and La. R.S. 23:1201(1). Penalties and attorney’s fees-in workers’ compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insur *899 ers. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46. Whether penalties and attorney’s fees are warranted is a factual determination, which will not be disturbed in the absence of manifest error. Williams v. Rowe-Treaudo, 11-0046 (La.App. 5 Cir. 9/27/11) 75 So.3d 502, 508.
Under La. R.S. 28:1201(F), when an employer fails- to pay workers’ compensation benefits, penalties and attorney’s fees shall be assessed if the employer did not reasonably controvert the claim. Redmann v. Bridgefield Cas. Ins. Co., 11-651 (La.App. 5 Cir.2012), 88 So.3d 1087, 1096, writ denied, 12-710 (La.5/18/12), 89 So.3d 1192. A claim is “reasonably controverted” if the employer has some valid reason or evidence upon which to base his denial of benefits. Id. To determine whether a claimant’s right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney’s fees under La. R.S. 23:1201, a court must ascertain whether the employer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay the benefits allegedly owed. Rowe-Treaudo, supra.
Under La. R.-S. 23:1201(1), when an employer discontinues workers’ compensation benefits, and such discontinuance is deemed arbitrary, capricious, or without probable cause, a penalty and reasonable attorney’s fees shall likewise be assessed. See Sider-Jeffery v. Jefferson Parish Pub. Sch. Sys., 12-366 (La.App. 5 Cir. 12/11/12), 105 So.3d 260, 264. Arbitrary and capricious behavior is willful and unreasonable action, without consideration and regard' for the facts and circumstances presented. J.E. Merit Constructors, Inc. v. Hickman, 00-943 (La. 1/17/01), 776 So.2d 435, 437-38.[1] Penalties and attorney’s fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. See Id. at 438.
In this case, Ms. Wilson reported, her injury to her supervisor, David Duhon, on July 11, 2013, three days after the incident. Although it was, Mr. Duhon’s responsibility to fill out .accident reports and to investigate alleged accidents, he admitted that he did not fill out an accident report, talk to any witnesses, or otherwise investigate the matter. In fact, the record reflects that. Mr. Duhon never completed an accident report. It was not until three weeks later,-on August 2, 2013, after.Ms. Wilson had provided a.statement to the workers’ compensation, adjuster, that Nathan Aronson completed the accident report. In this report, Mr. Aronson added the note: “Would like to deny this claim based on the [employee]-stating-a neck injury first and then a shoulder injury.” At' trial, Mr. Aronson explained that it is not his job to approve or deny workers’ compensation- claims; that determination is made solely by the third party adjuster, Gallagher Bassett. He nevertheless included the note because “that’s how [he] felt about the case after [he] reviewed the facts.” He also admitted that he did.not independently investigate the matter.
*900 In view of the foregoing, and upon our review of the entire record; we cannot find- that the OWC manifestly erred in determining that penalties and attorney’s fees were warranted in this case. We do And, however, that, the OWC erred as a matter of law in the amount of penalties imposed.
La. R.S. 2S:1201(F) provides in part: “The maximum amount of penalties which may be imposed at .a; hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.” We read “Section” to refer to the entirety of La. R.S. 23:1201. La, R.S. 23:1201(F)(2), (3), (4), and (5) employ “Subsection” clearly to refer to Subsection (F). Therefore, “Section” must generally refer to La. R.S. 23:1201. See Hawkins v. Redmon, 09-2418 (La.7/6/10), 42 So.3d 360, 366 (finding,as a matter of statutory interpretation, that the legislature’s use of different terms in the same sentence- signifies that the terms have different meanings). Accordingly, we conclude that the amount of penalties imposed under La. R.S. 23:1201, whether under Subsection (F) or (I), or both, cannot exceed $8,000.00. As a result, the OWC erred as a matter of law by imposing $16,000.00 in penalties under-La. R.S. 23:1201(F) and (I). We therefore amend the judgment to reduce the ampunt of penalties. from $16,000.00 to $8,000.00. Additionally, we find no error in the award of $8,000.00 in attorney’s fees.
Ms. Wilson answered this appeal pursuant to La. C.C;P. art. 2133 seeking additional attorney’s fees incurred by counsel in opposing Glazer’s appeal. In the context of workers’ compensation, attorney’s fees on appeal are appropriate when the employer appeals, obtains no relief, and the appeal necessitates additional work for the employee’s counsel, provided the employee properly requests the increase. Redmann, supra at 1097. Because our decision in this case grants Glazer some relief, we decline Ms. Wilson’s request for- attorney’s fees on appeal.
DECREE
For the foregoing reasons, we affirm the judgment of the Office of Workers’ Compensation finding that Patricia Wilson suffered a new accident and, injury in the course and scope of her employment on July 8, 2013, entitling her to workers’ compensation benefits from that date. We amend the judgment to reflect an assessment of penalties against Glazer’s Distributors of Louisiana in the amount of $8,000.00, affirm the judgment as amended, and-affirm the judgment in. all other respects. We deny Ms. Wilson’s request for attorney’s fees on appeal and assess costs of this appeal against Glazer’s Distributors of Louisiana.

AFFIRMED IN PART: AMENDED IN PART: AFFIRMED AS AMENDED.

. It is noted that in J.E. Merit Constructors, the Louisiana Supreme Court considered La. R.S. 23:1201(I)’s precursor, La. R.S. 23:1201.2, which was repealed by Acts 2003, No. 1204, § 2. The current version of the law differs only from its precursor in that it permits the imposition of ‘‘a penalty ... and a reasonable' attorney fee[,]” while the previous version permitted only attorney’s fees.