RALPH STRETZINGER

VERSUS

CLAIMS MANAGEMENT, INC. AND
WAL-MART

NO. 19-CA-168

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
STATE OF LOUISIANA
NO. 18-1388
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

December 11, 2019

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED IN PART; REVERSED IN PART**
    **RAC**
    **JGG**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
RALPH STRETZINGER
    Suzette Tagesen Murphy

COUNSEL FOR DEFENDANT/APPELLANT,
WAL-MART ASSOCIATES, INC. AND/OR WAL-MART STORES, INC. D/B/A
WAL-MART STORES AND/OR ALL ITS SUBSIDIARIES AND AFFILIATES
    Patrick F. Robinson

**CHAISSON, J.**

In this workers' compensation case concerning the denial of requested medical treatment, Wal-Mart appeals a judgment from the Office of Workers' Compensation which declared that Ralph Stretzinger was entitled to receive the requested medical treatment, a L4-5-S1 lumbar interbody fusion, and awarded him penalties and attorney's fees. For the following reasons, we affirm the judgment in part and reverse the judgment in part.

**FACTS AND PROCEDURAL HISTORY**

It is undisputed that on March 9, 2014, Mr. Stretzinger slipped and fell on a wet floor while working at Wal-Mart and sustained multiple serious injuries to his neck, back and lower extremities. In the months and years following the accident, Mr. Stretzinger received medical treatment for pain and other symptoms for his lower back from multiple medical providers. In 2016, following a course of conservative treatment which failed to prevent deteriorating symptoms, Mr. Stretzinger's orthopedist, Dr. K. Samer Shamieh, recommended a L4-5-S1 lumbar interbody fusion. The claims adjuster initially denied this request for treatment as not medically necessary and appropriate according to the Louisiana Workers' Compensation Treatment Guidelines. In accordance with the procedures set forth in these guidelines, Mr. Stretzinger sought review of this denial with the Medical Director of the Office of Workers' Compensation ("OWC"). In a January 19, 2017 letter, the medical director, following a review of the documentation, supported the denial of the requested surgery, but noted, "[t]he patient has criteria except for a psychosocial evaluation as required per the guidelines." Mr. Stretzinger submitted to the psychological examination in February, 2017, and was found to be a good candidate for surgery.

On November 8, 2017, Dr. Shamieh again requested authorization for the spinal fusion surgery. On December 22, 2017, Wal-Mart, through its adjustor,

19-CA-168                                              1

denied the requested medical treatment as "not related to the on the job injury" and "not in accordance with the Medical Treatment Schedule or R.S. 23:1203.1(D)."

Mr. Stretzinger again sought review of this denial with the OWC Medical Director, who, in January, 2018, rejected Mr. Stretzinger's application on the basis that disputes relating to compensability and/or causation (such as whether the requested medical treatment is "not related to the on the job injury") are not addressed by the medical director. The medical director made no findings as to whether the requested spinal surgery fell within the medical treatment guidelines.

On March 6, 2018, Mr. Stretzinger filed a disputed claim for compensation with the OWC. In its answer, Wal-Mart denied that Mr. Stretzinger is entitled to the proposed lumbar fusion surgery because the treatment is contrary to La. R.S. 23:1203.1 and unrelated to Mr. Stretzinger's work accident.

A hearing on the claim was held on October 22, 2018. At the start of the hearing, Wal-Mart abandoned its argument that the proposed surgery was unrelated to Mr. Stretzinger's work accident and stipulated that there was no dispute in terms of compensability. At the hearing, the parties contested whether the surgery was medically necessary. After taking the issue under advisement, the OWC judge, on January 28, 2019, issued a judgment with written reasons in favor of Mr. Stretzinger and against Wal-Mart. Specifically, the judge decreed Mr. Stretzinger entitled to the lumbar fusion recommended by Dr. Shamieh and ordered Wal-Mart to pay $4,000 in penalties as well as attorney's fees and costs pursuant to La. R.S. 23:1201(I) and La. R.S. 23:1201(F).

On appeal, Wal-Mart raises the following assignments of error:

1) Whether the judge legally or manifestly erred in finding the lumbar fusion surgery proposed by Dr. Shamieh as necessary under La. R.S. 23:1203, La. R.S. 23:1203.1, and the Louisiana Workers' Compensation medical treatment guidelines.

2) Whether the judge legally or manifestly erred in assessing penalties and attorney's fees based on the denial of treatment purportedly disallowed under the medical treatment guidelines.

3) Whether the judge legally or manifestly erred in awarding two separate penalties based on a single denial of treatment.

Additionally, Mr. Stretzinger has filed an answer to Wal-Mart's appeal seeking an award of costs, including attorney's fees, incurred in opposing this appeal. We address these assignments of error in turn in our discussion below.

**DISCUSSION**

*Entitlement to Surgery*

In its first assignment of error, Wal-Mart argues that the trial court legally erred in determining Mr. Stretzinger had met his evidentiary burden of proving entitlement to lumbar fusion surgery, because, according to Wal-Mart, Mr. Stretzinger had a heightened burden. Accordingly, our discussion begins with an examination of the relevant workers' compensation statutes.

One purpose of the workers' compensation statutes is to provide compensation and benefits to an employee who suffers injury within the course and scope of employment. *Lopez v. Marques Food Distributors*, 11-424 (La. App. 5 Cir. 12/28/11), 80 So.3d 1248, 1254. The employer has a duty to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal. La. R.S. 23:1203(A). In 2009, the legislature enacted La. R.S. 23:1203.1 which established a procedural regime to facilitate the efficient and timely delivery of medical and surgical treatment, hospital care, and other health care provider services to injured employees through the promulgation of a medical treatment schedule. *Church Mut. Ins. Co. v. Dardar*, 13-2351 (La. 5/7/14), 145 So.3d 271, 276. La. R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for

assessing whether the medical care required to be provided under La. R.S. 23:1203 is necessary. *Id.* To that end, the medical treatment schedule consists of a non-exhaustive list of preauthorized procedures to determine in advance the medical necessity for certain medical care. *Id.*

La. R.S. 23:1203.1 states in pertinent parts:

I. After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 *et seq.*, by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the assistant secretary. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
…

K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008, within forty-five days of the date of the issuance of the decision. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.

As the Supreme Court has noted in *Church Mutual*, "Louisiana R.S. 23:1203.1 and the medical treatment schedule it implements, while changing the

*process* for determining medical necessity by making the OWC judge's determination of necessary medical treatment secondary to the initial resolution of a medical benefit dispute by the medical treatment schedule, and thereafter the medical director, do not deprive claimants of any right to seek medically necessary care or alter the ongoing substantive obligation of employers to pay for such care under La. R.S. 23:1203(A)" (emphasis in original). *Church Mutual,* 145 So.3d at 285.[1]

In accordance with the procedure outlined above, Dr. Shamieh twice submitted requests for the authorization to perform a L4-5-S1 lumbar interbody fusion. When Wal-Mart denied the first request for surgery solely on the basis that the requested procedure was not medically necessary and did not conform to the medical treatment schedule, Mr. Stretzinger appealed this determination with the medical director of the OWC. The medical director, following a review of the documentation, supported the denial of the requested surgery, but noted, "[t]he patient has criteria except for a psychosocial evaluation as required per the guidelines." At trial, Mr. Stretzinger also introduced evidence of a physician's review recommendation by Dr. Alexander Michael who opined that Mr. Stretzinger met the majority of the criteria set forth in the OWC guidelines for spinal fusion surgery but recommended a pre-surgery psychosocial evaluation by a psychiatrist. Mr. Stretzinger did not seek further review of this determination by the medical director, but instead submitted to a psychological exam. Dr. Aaron Wolfson, who interviewed Mr. Stretzinger and reviewed his exam results, found him to be a good candidate for surgery with a low to moderate risk of a poor outcome.[2]

---

[1] Contrary to Wal-Mart's position, the medical treatment guidelines do not "prohibit" certain medical treatments. As the Court noted in *Church Mutual*, La. R.S. 23:1203.1 and the medical treatment schedule create *rebuttable presumptions* as to the necessary treatment required by La. R.S. 23:1203(A).

Believing Mr. Stretzinger now satisfied all of the criteria set forth in the medical guidelines to show that the spinal fusion surgery was medically necessary, Dr. Shamieh again sent Wal-Mart an authorization request for the surgery. Wal-Mart again denied the request, this time on the bases that the requested procedure was not medically necessary pursuant to the medical guidelines *and* that the treatment was not related to Mr. Stretzinger's on the job injury. This was the first instance in which Wal-Mart contested medical treatment for Mr. Stretzinger as not related to his injury.

Again, Mr. Stretzinger sought review of Wal-Mart's denial by filing a claim with the OWC medical director. The medical director declined to review Mr. Stretzinger's case stating that "The Medical Treatment Guidelines do not address denials based on issues of compensability." La. R.S. 23:1203.1 does not appear to contemplate such a non-decision by the medical director, whose sole purpose is to determine whether a requested service or treatment is medically necessary. In circumstances such as the case at bar where both the medical necessity and the relation to the workplace injury are contested, the medical director may make the determination regarding medical necessity and let the office of workers' compensation judge adjudicate any dispute regarding whether the requested treatment is reasonably related to the employee's injury. Were the medical director to accept only those applications which are denied by the employer solely on the basis as being not medically necessary according to the guidelines, this could potentially place the injured employee in a situation of having to resolve all other bases for the employer's denial of requested services with the OWC court prior to filing an appeal with the medical director. This adds an unnecessary and time-

---

[2] Evidence in the record indicates another psychologist reviewed Mr. Stretzinger's test results; however, this opinion was never introduced into evidence.

consuming step to a procedure intended to facilitate the efficient and timely delivery of medical and surgical treatment.

Under La. R.S. 23:1203(A), Mr. Stretzinger has a right to payment of medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work injury. *Gaines v. Home Care Sols., LLC*, 15-0895 (La. App. 4 Cir. 4/6/16), 192 So.3d 794, 807, *writ denied*, 16-0847 (La. 6/17/16), 192 So.3d 765. When the medical director rejects an application to review whether a requested treatment is medically necessary pursuant to the medical treatment guidelines, the injured worker may seek a review of that rejection with the OWC court. In such a situation, the claimant need only show by a preponderance of the evidence that the requested treatment is medically necessary.[3]

At trial, Wal-Mart withdrew its prior argument that Mr. Stretzinger's injury for which he sought treatment was not causally related to his workplace injury; therefore, the only question before the OWC judge was whether the requested surgery was medically necessary. As this Court has previously held, the fact-finder's determination as to whether the employee has discharged his burden of proof is a factual determination that should not be disturbed upon appellate review unless clearly wrong or manifestly erroneous. *Wilson v. Glazer's Distributors of Louisiana, Inc.*, 15-493 (La. App. 5 Cir. 1/27/16), 185 So.3d 891, 898. If the trial court's findings are reasonable in light of the entirety of the record, the appellate court may not reverse. *Id.* If there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous. *Id.*

In support of his position that the spinal fusion surgery was necessary under the medical treatment guidelines[4], Mr. Stretzinger introduced the following

---

[3] Had the medical director made a determination, that decision could only be overturned by the OWC court by "clear and convincing" evidence presented by the claimant. S*ee Usie v. Lafayette Par. Sch. Sys.*, 13-294 (La. App. 3 Cir. 10/9/13), 123 So.3d 885, 887.

[4] The guidelines at issue state:

evidence: his medical records; the deposition of Dr. Shamieh wherein he testified that the need for the recommended lumbar spine fusion surgery is directly related to his accident and also medically necessary and appropriate under the treatment guidelines; the deposition of Dr. Wolfson, who testified that Mr. Stretzinger is a good candidate for surgery based on his psychosocial evaluation; the physician's review recommendation of Dr. Michael who stated that Mr. Stretzinger met the majority of the criteria of the guidelines for spinal fusion surgery except for the psychological evaluation; and the letter documenting the medical director's initial determination that Mr. Stretzinger has criteria for the spinal fusion surgery except for a psychosocial evaluation as required per the guidelines.[5]

In contrast, Wal-Mart introduced no evidence whatsoever at trial; rather, they pointed to the medical records introduced by Mr. Stretzinger as support for their position that Mr. Stretzinger's symptoms and pathology exclude him from spinal fusion surgery under the medical treatment guidelines. While this conclusion is not unreasonable, a review of the record before us indicates that the conclusion of the OWC judge, that the spinal fusion surgery is medically necessary and conforms to the medical treatment guidelines, is also reasonable and supported by evidence in the record. Accordingly, we find that the OWC judge did not

---

e. Pre-operative Surgical Indications: Required pre-operative clinical surgical indications for spinal fusion include all of the following:
    i. all pain generators are adequately defined and treated; and
    ii. all physical medicine and manual therapy interventions are completed; and
    iii. x-ray, MRI, or CT/Discography demonstrate disc pathology or spinal instability; and
    iv. spine pathology is limited to two levels; and
    v. psychosocial evaluation with confounding issues addressed;
    vi. for any potential fusion surgery, it is recommended that the injured worker refrain from smoking for at least six weeks prior to surgery and during the period of fusion healing. Because smokers have a higher risk of non-union and higher post-operative costs, it is recommended that insurers cover a smoking cessation program peri-operatively.
40 LAC Pt I, § 2023

[5] Mr. Stretzinger also testified at the hearing on his own behalf; Wal-Mart did not cross-examine him.

manifestly err in concluding that Mr. Stretzinger's spinal fusion surgery is medically necessary.

*Penalties*

We next consider Wal-Mart's second and third assignments of error concerning whether the OWC judge erred in its assessment and award of penalties and attorney's fees based on Wal-Mart's denial of treatment.

The January 28, 2019 judgment of the OWC judge specifically states that "pursuant to LA R.S. 23:1201(I) and LA R.S. 23:1201(F), defendant shall pay $4,000 in penalties for termination of benefits and failure to authorize medical treatment, specifically the L4-5-S1 anterior lumbar interbody fusion recommended by Dr. K. Samer Shamieh." The court further awarded attorney's fees in the amount of $10,000.

Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41, 46. Whether penalties and attorney's fees are warranted is a factual determination, which will not be disturbed in the absence of manifest error. *Williams v. Rowe–Treaudo*, 11–0046 (La. App. 5 Cir. 9/27/11), 75 So.3d 502, 508.

The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by workers' compensation law, and will subject the employer to penalties and attorney's fees pursuant to La. R.S. 23:1201. *Bartley v. Schlumberger Technology Company*, 16-538 (La. App. 3 Cir. 12/7/16), 209 So.3d 123. Under La. R.S. 23:1201(F), these penalties and attorney's fees shall be assessed if an employer did not reasonably controvert a claim. *Wilson*, 185 So.3d at 899. A claim is "reasonably controverted" if the employer has some valid reason or evidence upon which to base his denial of benefits. *Id*. To

determine whether a claimant's right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney's fees under La. R.S. 23:1201, a court must ascertain whether the employer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay the benefits allegedly owed. *Id.*

In her written reasons for judgment, the OWC judge specifically found that "defendant had ample information from physicians, including Dr. Shamieh and Dr. Michael regarding the claimant's medical condition, his need for surgery, and whether the procedure was medically necessary and met the requirements as outlined in the [medical treatment guidelines.]" In addition, while Wal-Mart based its second denial of Mr. Stretzinger's surgery on the basis that his injury was unrelated to his work accident (and maintained this position in its answer to the disputed claim for compensation), at the day of the hearing Wal-Mart stipulated that it did not dispute the relation of Mr. Stretzinger's accident to his injury. Upon our review of the record, we find that the OWC judge did not manifestly err in determining that Wal-Mart failed to reasonably controvert the claim as required under La. R.S. 23:1201(F), and therefore the award of penalties under that provision is affirmed.

Turning next to the question of whether the OWC judge properly awarded penalties under both La. R.S. 23:1201 Subsections (F) and (I), we begin by noting that La. R.S. 23:1201 expressly provides for multiple penalties.[6] The Supreme Court has observed that La. R.S. 23:1201 imposes a twofold continuing obligation on the employer/insurer: (1) to pay all compensation and medical benefits due,

---

[6] "The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars." La. R.S. 23:1201(F).

*i.e.*, payment of the correct amount owed, and (2) to pay for compensation and medical benefits within the time limit specified. *Fontenot v. Reddell Vidrine Water Dist.*, 02-0439 (La. 1/14/03), 836 So.2d 14, 25. The Court noted that an employer/insurer may make multiple errors in this regard and may be subject to two or more claims under La. R.S. 23:1201(F). As the court stated, "[i]n those instances where a claim is either not reasonably controverted or if nonpayment results from conditions under the control of the employer or insurer, [allowing] for multiple penalties will address the recalcitrant employer or insurer and will encourage employers and their workers' compensation insurers to honor their continuing obligation to the injured worker," and further stated that "to conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker 'whole' but rather to discourage specific conduct on the party of the employer." *Id.* Since the Court's ruling in *Fontenot*, Louisiana Revised Statute 23:1201(F) was amended by the legislature by 2003 La. Acts No. 1204, §1, to expressly provide for multiple penalties and to place a cap on the amount of penalties which may be awarded at $8,000. *Maricle v. Sunbelt Builders, Inc.*, 05-398 (La. App. 3 Cir. 11/2/05), 916 So.2d 1226, 1234.

While the language of La. R.S. 23:1201 allows for multiple penalties, and there have been cases which have awarded penalties under both Subsections (F) and (I)[7], we do not believe that the facts of this case support an award under Subsection (I) and find that the OWC manifestly erred in awarding penalties under that Subsection.

Subsection (I) of La. R.S. 23:1201 provides for penalties of up to $8,000 and reasonable attorney's fees for the prosecution of claims against an employer or insurer who at any time *discontinues* payment of workers' compensation claims

---

[7] See *Wilson, supra*; *Roberts v. Thibodaux Healthcare Ctr.*, 05-0774 (La. App. 1 Cir. 3/24/06), 934 So.2d 84, 87.

when such discontinuance is found to be arbitrary, capricious, or without probable cause. While there is not extensive evidence supporting the payment of indemnity benefits in the record, it does not appear to be disputed that Wal-Mart began paying Mr. Stretzinger indemnity benefits shortly after the accident and has continued to do so. Furthermore, the record shows that, even after the second denial of the requested spinal fusion surgery, Wal-Mart continued to pay for follow-up visits and other medical care for Mr. Stretzinger. This case appears therefore to concern the denial of the requested spinal fusion surgery and not a "discontinuance" of medical benefits. Accordingly, we reverse that portion of the OWC judgment awarding $2,000 in penalties under La. R.S. 23:1201(I).

*Attorney's Fees*

The OWC judge awarded reasonable attorney's fees in the amount of $10,000. La. R.S. 23:1201(J) states that only one reasonable attorney's fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim, notwithstanding that more than one violation in the Section which provides for an award of attorney's fees may be applicable. Having found previously that the trial court did not err in its award of penalties under La. R.S. 23:1201(F), a provision which allows for the award of reasonable attorney's fees, we find no legal or manifest error in the trial court's award of $10,000 in attorney's fees.

Mr. Stretzinger answered this appeal pursuant to La. C.C.P. art. 2133 seeking an additional award of costs and attorney's fees incurred by counsel in opposing Wal-Mart's appeal. Considering the additional work done on appeal, we hereby award $2,000 in additional attorney's fees to Mr. Stretzinger; however, given our decision to reverse the award of penalties under La. R.S. 23:1201(I), each party to the appeal shall bear his/its own costs.

**DECREE**

For the reasons set forth above, the judgment in favor of Mr. Stretzinger is affirmed in part and reversed in part. Additionally, we render judgment in favor of Mr. Stretzinger in the amount of $2,000 for reasonable attorney's fees for work done on appeal.

**AFFIRMED IN PART;
REVERSED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 11, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

## 19-CA-168

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
NO ATTORNEYS WERE ENOTIFIED

**MAILED**
SUZETTE TAGESEN MURPHY (APPELLEE)
ATTORNEY AT LAW
3045 RIDGELAKE DRIVE
SUITE 203
METAIRIE, LA 70002

PATRICK F. ROBINSON (APPELLANT)
ATTORNEY AT LAW
3850 NORTH CAUSEWAY BOULEVARD
SUITE 630
METAIRIE, LA 70002